In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

No. 16-3572

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

CARNELL KING,

*Defendant-Appellant.*

———————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 14 CR 353 — **Robert W. Gettleman**, *Judge.*

———————————

ARGUED MAY 31, 2017 — DECIDED JUNE 30, 2017

———————————

Before KANNE, SYKES, and HAMILTON, *Circuit Judges.*

HAMILTON, *Circuit Judge.* Defendant Carnell King appeals his below-guideline sentence. Since he pled guilty and the district court's guideline calculation was admittedly correct, it is not surprising that we affirm the sentence. We issue a precedential opinion in the case, however, because King has raised a novel argument about the relationship between the Sentencing Guidelines and the statute instructing sentencing judges

on what to consider in making their decisions, 18 U.S.C. § 3553(a).

The district judge did exactly what he was supposed to do in this case: calculate the correct offense level and criminal history category under the Guidelines, then step back and use his independent judgment under § 3553(a) to impose a sentence tailored to the individual offender and his crimes. See *Gall v. United States*, 552 U.S. 38, 49–50 (2007). King argues, however, that the "parsimony principle" in § 3553(a), which instructs the court to impose a sentence "sufficient, but not greater than necessary," to serve the statutory purposes of sentencing, requires an adjustment of the applicable guideline calculations themselves. In support, he cites a tentative suggestion from a non-precedential Sixth Circuit decision. We reject his argument, which would make post-*Booker* federal sentencing even more complex than it already is, but without gaining any apparent benefit in terms of more just sentences.

I.   *The Crimes and the Punishment*

King is an unsuccessful fraudster. Between 2012 and 2014, he obtained personal identifying information (e.g., addresses, dates of birth, and Social Security numbers) for more than 100 people, including the Director of the National Security Agency. King used this information to create and use, or to attempt to use, 185 access devices (e.g., credit and debit cards). He also prepared and submitted 62 false tax refund claims in names other than his own. Thankfully, King was not very successful in his endeavors. Reported actual losses from his crimes totaled only $10,980 ($367 from credit cards and $10,613 in false tax returns).

King was first arrested in June 2014 and charged with access device fraud. He was not detained before trial, but one condition of his release was that he not commit a federal crime. In November 2014, though, King was arrested again and charged with wire fraud. King had resumed his activities and attempted to use credit card accounts of various individuals less than two months after his initial arrest. His pretrial release was revoked and he was detained. King eventually pled guilty to five counts, including a charge of aggravated identity theft under 18 U.S.C. § 1028A(a)(1), which requires a minimum sentence of 24 months in prison consecutive to any other sentence. The district court sentenced King to concurrent terms of 24 and 30 months in prison on three access device fraud counts under 18 U.S.C. § 1029(a) and § 1029(b)(1) and the fraudulent tax refund count under 18 U.S.C. § 287. That sentence was below the applicable guideline range. The court added the mandatory consecutive 24 months for aggravated identity theft for a total sentence of 54 months.

On appeal, King challenges his sentence on the three access device fraud counts and the fraudulent tax refund count. We start with the guideline calculation. Because all the crimes were so closely related, they were grouped together under U.S.S.G. § 3D1.2 for guideline calculation purposes. Under § 2B1.1, the Guideline for fraud offenses, the base offense level was six, and two levels were added based on the number of victims. The Guideline for fraud offenses makes the amount of loss a major factor in the calculation. The general rule is that the amount of loss is the greater of actual or intended loss. § 2B1.1 note 3. For the multiple crimes in King's case, the actual loss was $10,980. The additional intended loss, however, was $195,948 from 62 fraudulent tax refund claims and $92,500 based on possession of 185 fake credit and debit cards,

derived from § 2B1.1 note 3(F)(i), which instructs that the loss amount shall be not less than $500 per device.[1]

The total loss for guideline purposes was $288,448. Because that was more than $250,000 but less than $550,000, twelve levels were added to King's offense level. § 2B1.1(b)(1)(G). King has not contested the accuracy of the loss calculation in the district court or on appeal. With other adjustments for obstruction of justice and King's criminal history of Category II, the final guideline range for King was 46 to 57 months in prison, plus the mandatory consecutive 24 months for aggravated identity theft.[2]

---

[1] The $500 loss amount in note 3(F)(i) was inserted into the Guidelines in 2000. U.S.S.G. supp. app. C amend. 596. The rule was created as a response to the Wireless Telephone Protection Act (WTPA), which instructed the Sentencing Commission to "provide an appropriate penalty for offenses involving the cloning of wireless telephones," Pub. L. No. 105-172, § 2(e)(1), 112 Stat. 53, 55 (1998), as well as a response to the Identity Theft and Assumption Deterrence Act, Pub. L. No. 105-318, 112 Stat. 3007 (1998), which has overlapping statutory definitions with the WTPA. U.S.S.G. supp. app. C, amend. 596. In response, the Commission reviewed the loss amounts created by identity theft crimes and determined an adequate measure for establishing penalties. The Commission reasoned that its "research and data supported increasing the minimum loss amount … from $100 to $500 per access device." *Id.* The prior minimum loss amount of $100 per "stolen credit card[]" had been included in the first iteration of the Guidelines. U.S.S.G. §2B1.1 note 4 (1987).

[2] If only the actual loss amount of $10,980 had been used to calculate the offense level, there would have been a two-level increase for a loss exceeding $6,500 but less than $15,000. U.S.S.G. § 2B1.1(b)(1)(B). Without the extra $92,500 loss calculation for the access devices, the intended loss of the IRS claims alone would have been $195,948, resulting in a ten-level increase. U.S.S.G. § 2B1.1(b)(1)(F).

The district judge concluded, however, that the guideline range overstated King's culpability. The judge noted in particular the defense argument that so much of the loss amount was driven by "theoretical" rather than actual loss. The judge provided a thoughtful explanation of the sentence that considered a variety of aggravating and mitigating factors, including King's continued crimes while on pretrial release, the harm to the victims, the conditions of King's pretrial detention, and his family situation. In the end, the court imposed a below-guideline sentence of 30 months plus the mandatory consecutive 24 months for a total sentence of 54 months in prison.

II. *The Relationship Between the Guidelines and § 3553(a)*

So far, then, it is hard to see what King is appealing. The district court calculated the guideline range accurately, as King agrees, and then used its power and responsibility under § 3553(a) to impose a below-guideline sentence. That procedure follows the guidance of the Supreme Court, this court, and the Sentencing Commission. See *Gall*, 552 U.S. at 49–50; *Rita v. United States*, 551 U.S. 338, 351 (2007); *United States v. Pennington*, 667 F.3d 953, 956 (7th Cir. 2012); U.S.S.G. § 1B1.1. And substantively, the result was a below-guideline sentence that we must presume was not unreasonably harsh. See *Rita*, 551 U.S. at 347.

King argues, however, that the guideline calculation in this case violates the statute, § 3553(a), and its parsimony principle. To understand the argument, it may help to point out what King is not arguing. He is not arguing that the district court erred in calculating the guideline range according to the Guidelines themselves. He also is not arguing that he was prevented from arguing in the district court for a below-

guideline variance under § 3553(a). He made that argument, and the court agreed.

King is arguing instead for a more subtle nuance: that the guideline instruction to use the $500 minimum loss per access device is contrary to the statutory parsimony principle. He argues that the statutory parsimony principle should allow a defendant to argue that the guideline calculation itself should be lowered *before the court goes on to the § 3553(a) analysis*. He wants this new intermediate step added to the sentencing process, requiring the court to consider the parsimony principle twice, first in considering whether to modify an otherwise correct guideline calculation itself, and second in exercising its final sentencing authority under § 3553(a).

King's proposal has no apparent basis in the statute. To support his argument, he relies on a suggestion in *United States v. Lyles*, 506 Fed. Appx. 440, 445–46 (6th Cir. 2012). That case also involved a loss calculation based on the $500 per access device minimum loss amount in note 3(F)(i). The Sixth Circuit affirmed the defendant's sentence based on the $500 minimum but noted: "Theoretically, the $500 fictional amount should have to pass muster under the parsimony provision of 18 U.S.C. § 3553(a) … . A rule requiring courts to automatically double a sentence based on a fictional loss multiplier is a rule that may well produce a sentence greater than necessary to achieve punishment's aims." *Id.* at 445. Because the point had not been argued or briefed, the Sixth Circuit noted the "problem" but did not decide it. *Id.* at 446. Judge McKeague dissented from that dictum. *Id.* at 454. More recently, the Sixth Circuit seems to have rejected the suggestion in a precedential decision, *United States v. Moon*, 808 F.3d 1085, 1092–93 (6th Cir. 2015), where the court affirmed a sentence

based on the $500 per access device minimum loss, finding that the minimum as applied in *Moon* was not substantively unreasonable.

Our disagreement with the *Lyles* dictum focuses on one word: "automatically." The panel majority wrote: "A rule requiring courts to automatically double a sentence based on a fictional loss multiplier is a rule that may well produce a sentence greater than necessary … ." 506 Fed. Appx. at 445. As a general rule, we might be inclined to agree with that statement, but the critical point is that nothing in the Guidelines requires *anything* "automatically." They are advisory. See *Beckles v. United States*, 580 U.S. —, 137 S. Ct. 886 (2017); *United States v. Booker*, 543 U.S. 220 (2005). The sentencing judge must evaluate the advice of the Guidelines and then must use his or her independent judgment under § 3553(a). In fact, the sentencing judge is not even allowed to presume that a guideline sentence is a reasonable one. *Rita*, 551 U.S. at 351, citing *Booker*, 543 U.S. at 259–60. The parsimony principle in the statute— "impose a sentence sufficient, but not greater than necessary"—applies when the sentencing judge reaches the final decision under § 3553(a). It does not provide a basis, at least in an individual sentencing proceeding, for modifying the guideline calculation itself.

To be clear, a defendant is always free to argue that the Guidelines, taken as a whole or when particular provisions are examined, recommend an unduly harsh sentence in his case. That is as true for the $500 per access device minimum loss as for any other provision in the Guidelines. The appropriate point to address such arguments is after the district court has applied the Guidelines to determine a final guideline range, using the court's discretion to impose a different

("variant") sentence under § 3553(a). The parsimony principle does not require the district judge to consider the same argument twice, once in a novel adjustment to the guideline calculation itself and again under § 3553(a).

King's proposal for further consideration of the parsimony principle would also conflict with a long line of our post-*Booker* decisions holding that a district judge is not required to duplicate the efforts of the Sentencing Commission. We have repeatedly held that when a defendant argues that a particular guideline provision is unduly harsh as a categorical matter (crack-powder cocaine ratios and numerous child pornography factors are common targets), a judge who chooses to follow the Guidelines is not required, in effect, to repeat the work of the Sentencing Commission by evaluating the overall policy issues and general reasonableness of the provision. E.g., *United States v. Freeman*, 843 F.3d 315, 317–18 (7th Cir. 2016); *United States v. Rosales*, 813 F.3d 634, 637–38 (7th Cir. 2016); *United States v. Estrada-Mederos*, 784 F.3d 1086, 1088 (7th Cir. 2015) (collecting cases); *United States v. Schmitz*, 717 F.3d 536, 542 (7th Cir. 2013) (collecting cases). The judge may choose to address and accept such arguments, of course, as the Supreme Court made clear in *Kimbrough v. United States*, 552 U.S. 85, 109–10 (2007), relying upon the parsimony principle of § 3553(a), but the judge need not do so.

The parsimony principle in § 3553(a) is an important and binding instruction from Congress. A sentencing court takes it into account sufficiently when the court considers whether and to what extent to accept the advice provided by the Sentencing Guidelines in a particular case. Judge Gettleman did so here and imposed a sentence that was thoughtful and sound. The judgment of the district court is AFFIRMED.