**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 20-4256**

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

TREY CARDALE CAMPBELL,

Defendant – Appellant.

.

Appeal from the United States District Court for the Northern District of West Virginia, at Martinsburg.  Gina M. Groh, Chief District Judge.  (3:19-cr-00026-GMG-RWT-1)

Argued:  September 24, 2021                    Decided:  January 7, 2022

Before GREGORY, Chief Judge, and MOTZ and THACKER, Circuit Judges.

Vacated and remanded for resentencing by published opinion.  Judge Motz wrote the opinion in which Chief Judge Gregory and Judge Thacker joined.

**ARGUED:**  Jenny R. Thoma, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Wheeling, West Virginia, for Appellant.  Timothy David Helman, OFFICE OF THE UNITED STATES ATTORNEY, Martinsburg, West Virginia, for Appellee.  **ON BRIEF:** Aaron D. Moss, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Martinsburg, West Virginia, for Appellant.  William J. Powell, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Wheeling, West Virginia, for Appellee.

DIANA GRIBBON MOTZ, Circuit Judge:

This appeal raises the question of whether, as the district court determined, commission of an attempt crime constitutes a "controlled substance offense" supporting a career offender sentencing enhancement. Because the Sentencing Guidelines' definition of a "controlled substance offense" does not include an attempt crime, we must vacate the enhanced sentence imposed in this case and remand for resentencing.

I.

After a jury convicted Trey Cardale Campbell of possession with intent to distribute opiates in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), he received an enhanced sentence as a career offender. *See* United States Sentencing Guidelines (U.S.S.G.) § 4B1.1. The district court identified two, and only two, predicate "controlled substance offense[s]" justifying the enhancement – a West Virginia conviction for delivery of crack cocaine in violation of a statute that criminalizes attempt offenses, *see* W. Va. Code §§ 60A-1-101(h), 60A-4-401(a), and a federal conviction for aiding and abetting distribution of cocaine base within 1,000 feet of a school. The career offender enhancement increased Campbell's offense level from 22 to 32 and his criminal history category from IV to VI. Without the enhancement, his recommended imprisonment range was 63-78 months. With it, the recommended range was 210-240 months.

Campbell objected to the sentencing enhancement, arguing that the Sentencing Guidelines did not include attempt within its definition of "controlled substance offense," and so he did not have the requisite two prior convictions of a "controlled substance

2

offense." He renews that argument before us.[1] The district court overruled Campbell's objections to the career offender enhancement, found that he did have two prior convictions of "controlled substance offense[s]," and on that basis imposed a sentence of 180 months imprisonment.

Campbell then timely filed this appeal. We "consider de novo the [question of] whether a prior conviction qualifies under the Guidelines as a 'controlled substance offense' for purposes of a sentencing enhancement." *United States v. Allen*, 909 F.3d 671, 674 (4th Cir. 2018).

II.

The Sentencing Guidelines provide that a defendant will be sentenced as a "career offender" if, among other requirements, "the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1(a)(3). The Sentencing Guideline at issue here, U.S.S.G. § 4B1.2(b), defines a "controlled substance offense" as follows:

> The term "controlled substance offense" means an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

The Sentencing Commission's commentary in the first application note to U.S.S.G. § 4B1.2(b) additionally provides that a controlled substance offense "include[s] the offenses

---

[1] Campbell also argues that the district court failed to give adequate consideration to his nonfrivolous mitigating arguments for a reduced sentence. *See United States v. Blue*, 877 F.3d 513 (4th Cir. 2017). Given our holding, we need not reach this issue.

of aiding and abetting, conspiring, and attempting to commit such offenses.'"  U.S.S.G. § 4B1.2, appl. n.1 (hereafter "the Commentary").

To determine whether a conviction under an asserted predicate offense statute like the West Virginia law constitutes a "controlled substance offense" as defined by the Sentencing Guidelines, we employ the categorical approach.  *United States v. Ward*, 972 F.3d 364, 368 (4th Cir. 2020).  If the "least culpable" conduct criminalized by the predicate offense statute does not qualify as a "controlled substance offense," the prior conviction cannot support a career offender enhancement.  *United States v. King*, 673 F.3d 274, 278 (4th Cir. 2012).

The West Virginia conviction that served as one of the predicate offenses justifying Campbell's enhanced sentence arises from a statute that makes it "unlawful for any person to manufacture, *deliver*, or possess with intent to manufacture or deliver a controlled substance."  W. Va. Code § 60A-4-401(a) (emphasis added).  The statute further provides that "deliver . . . means the actual, constructive *or attempted* transfer from one person to another of" controlled substances or imitation or counterfeit controlled substances.  W. Va. Code § 60A-1-101(h) (emphasis added).  In other words, the least culpable conduct criminalized by the West Virginia statute is an attempt to deliver a controlled substance.  W. Va. Code §§ 60A-1-101(h); 60A-4-401(a).  So, under the categorical approach, the question is whether U.S.S.G. § 4B1.2(b)'s definition of "controlled substance offense" includes an attempt to deliver a controlled substance.

Campbell maintains that an attempt crime cannot constitute a "controlled substance offense."[2] For this reason, he further contends that his West Virginia conviction does not qualify as a career offender predicate. Given that the district court only identified two predicate controlled substance offenses, if the West Virginia conviction is not a "controlled substance offense," then Campbell has not committed the two predicate offenses required for the enhanced sentence under U.S.S.G. § 4B1.1. And if Campbell did not commit two predicate offenses, the district court erred in applying the career offender enhancement to increase his sentence.

Resolving the question of whether an attempted offense can constitute a "controlled substance offense" has challenged the federal courts because of a crucial difference between the text of U.S.S.G. § 4B1.2(b) itself and the text of the Sentencing Commission's Commentary to that Guideline. The text of U.S.S.G. § 4B1.2(b) does not state or in any way indicate that aiding and abetting, conspiracy, and attempt are "controlled substance offense[s]"; but the Commentary expressly states that these crimes are "controlled substance offense[s]." *Compare* U.S.S.G. § 4B1.2(b), *with* U.S.S.G. § 4B1.2 appl. n.1.

---

[2] Campbell also argues that his other predicate offense, a federal conviction for aiding and abetting distribution of cocaine base within 1,000 feet of a school, is not a "controlled substance offense." Campbell Br. at 24, 26. In view of our holding, we need not decide whether Campbell's aiding and abetting conviction is, like attempt, an inchoate offense incapable of supporting a career offender enhancement, or rather a theory of liability for the substantive "controlled substance offense." *Cf. Borden v. United States*, 141 S. Ct. 1817, 1823 n.3 (2021) (distinguishing between "inchoate crimes (conspiracy or attempts) and accessory liability (aiding and abetting)."). *Compare Allen*, 909 F.3d at 675 ("[T]he long-standing rule [is] that an aider and abettor to a crime generally is punishable under federal law as a principal."), *with United States v. Pratt*, 351 F.3d 131, 135 (4th Cir. 2003) ("An attempt to commit a crime . . . is recognized as a crime distinct from the crime intended by the attempt . . . .").

In *Stinson v. United States*, the Supreme Court directed courts to take commentary to the Sentencing Guidelines as authoritative unless doing so would violate the Constitution or a federal statute, or would be a "plainly erroneous" or "inconsistent" reading of the Sentencing Guideline itself. 508 U.S. 36, 38 (1993). The Court explained that when the "commentary and the guideline it interprets are inconsistent in that following one will result in violating the dictates of the other, the Sentencing Reform Act itself commands compliance with the guideline." *Id.* at 43.

Initially, courts read *Stinson* to support a holding that an inchoate crime like attempt or conspiracy did constitute a "controlled substance offense," because the Commentary to U.S.S.G. § 4B1.2(b) so stated. *See, e.g.*, *United States v. Raupp*, 677 F.3d 756, 759 (7th Cir. 2012), *overruled on other grounds*, *United States v. Rollins*, 836 F.3d 737 (7th Cir. 2016); *United States v. Mendoza-Figueroa*, 65 F.3d 691, 692–94 (8th Cir. 1995) (en banc); *United States v. Piper*, 35 F.3d 611, 616–18 (1st Cir. 1994); *United States v. Vea-Gonzalez*, 999 F.2d 1326, 1330 (9th Cir. 1993), *overruled on other grounds*, *Custis v. United States*, 511 U.S. 485 (1994).

In 2018, the D.C. Circuit became the first court to reject this view. *See United States v. Winstead*, 890 F.3d 1082 (D.C. Cir. 2018) (Silberman, J.). The *Winstead* court concluded that "there is no question that . . . the commentary [to U.S.S.G. § 4B1.2(b)] adds a crime, 'attempted distribution,' that is not included in the guideline." *Id.* at 1090. Because U.S.S.G. § 4B1.2(b) "present[ed] a very detailed 'definition' of controlled substance offense that clearly excludes inchoate offenses," the D.C. Circuit held that the

6

Commentary's inclusion of such offenses had "no grounding in the guidelines themselves," and thus U.S.S.G. § 4B1.2(b) and its Commentary were inconsistent. *Id.* at 1091–92.

The Sixth Circuit followed the next year, overturning circuit precedent to the contrary in an *en banc* decision. *See United States v. Havis*, 927 F.3d 382, 386 (6th Cir. 2019) (en banc) (per curiam) ("To make attempt crimes a part of § 4B1.2(b), the Commission did not interpret a term in the guideline itself — no term in § 4B1.2(b) would bear that construction. Rather, the Commission used Application Note 1 to *add* an offense not listed in the guideline." (footnote omitted)). Since that time, the Third Circuit, also sitting *en banc*, has agreed with the Sixth and D.C. Circuits that the Commentary is inconsistent with U.S.S.G. § 4B1.2(b). *United States v. Nasir*, 982 F.3d 144, 156–60 (3d Cir. 2020) (en banc), *vacated and remanded on other grounds*, __ S. Ct. __, No. 20-1522, 2021 WL 4507560 (U.S. Oct. 4, 2021), *aff'd on remand*, __ F.4th __, No. 18-2888, 2021 WL 5173485, at *6–9 (3d Cir. Nov. 8, 2021) (en banc). And panels of the Fifth and Ninth Circuits have recently indicated that they would also do so were they not bound by circuit precedent. *See United States v. Crum*, 934 F.3d 963, 966 (9th Cir. 2019); *United States v. Goodin*, 835 F. App'x 771, 782 n.1 (5th Cir. 2021) (unpublished) (quoting *Nasir*, 982 F.3d at 159-60).

The First, Second, Seventh, Eighth, and Eleventh Circuits, however, have continued to hold that inchoate crimes like attempt and conspiracy qualify as controlled substance offenses under U.S.S.G. § 4B1.2(b). *See United States v. Smith*, 989 F.3d 575, 583–85 (7th Cir. 2021) ("conclud[ing] that § 4B1.2's Application Note 1 is authoritative and that 'controlled substance offense' includes inchoate offenses" (citation omitted)), *cert. denied*,

__ S.Ct. __, No. 21-496 (U.S. Nov. 15, 2021); *accord United States v. Lewis*, 963 F.3d 16, 21–23 (1st Cir. 2020); *United States v. Richardson*, 958 F.3d 151, 154–55 (2d Cir. 2020); *United States v. Merritt*, 934 F.3d 809, 811–12 (8th Cir. 2019); *United States v. Lange*, 862 F.3d 1290, 1295 (11th Cir. 2017).

And now, this question has reached our doorstep.

III.

The Supreme Court's caution in *Stinson* that commentary to the Sentencing Guidelines "is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline" guides us. 508 U.S. at 38. With those principles in mind, we begin with the text of U.S.S.G. § 4B1.2(b). *See United States v. Shell*, 789 F.3d 335, 350 (4th Cir. 2015) ("[I]t is the [guideline's] text, of course, that takes precedence, and so that is where we begin." (citation omitted)). And in doing so, if possible, we will give a guideline's text "its plain meaning." *United States v. Strieper*, 666 F.3d 288, 294 (4th Cir. 2012) (quoting *United States v. Hargrove*, 478 F.3d 195, 205 (4th Cir. 2007)).

The text of U.S.S.G. § 4B1.2(b) contains a lengthy definition of a "controlled substance offense" that does not mention attempt offenses. Rather, § 4B1.2(b) states that a "'controlled substance offense' means an offense . . . that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to" commit those acts. U.S.S.G. § 4B1.2(b). In contrast, the text of the Commentary adds attempt crimes to this definition, providing *inter alia* that a "controlled substance

8

offense" also "include[s] the offenses of aiding and abetting, conspiring, and attempting to commit such offenses."  U.S.S.G. § 4B1.2, appl. n.1.

The Supreme Court has reiterated that defining the same key term in different ways, such that one definition includes a category that the other definition does not, renders those two definitions "inconsistent."  *See Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158, 168–69 (2007) ("[T]he two regulations are inconsistent, for the one limits the definition of 'domestic service employee' . . . to workers employed by the household, but the other includes in [that definition] . . . persons who are *not* employed by the household.").  Under this straightforward rule, the text of U.S.S.G. § 4B1.2(b) and that of the Commentary are not just "inconsistent," but are plainly so.  *Stinson*, 508 U.S. at 43.

This conclusion is hardly novel.  Over a century ago, the Supreme Court rejected a similar effort to read attempt offenses into the plain text of a provision that mentioned only substantive crimes.  *See Keck v. United States*, 172 U.S. 434, 444 (1899) (concluding "from the plain text of the law . . . [t]hat while it embraces the act of smuggling or clandestine introduction, it does not include mere attempts to commit the same.  Nothing in the statute by the remotest possible implication can be found to cover mere attempts to commit the offense referred to . . . . [T]his contention overlooks the plain distinction between the attempt to commit an offense and its actual commission.").  The same logic applies today.  Accordingly, *Stinson* directs that "the Sentencing Reform Act itself commands compliance with the guideline."  508 U.S. at 43.  Thus, *Stinson* requires the conclusion that an attempt offense, and so the West Virginia conviction at issue here, is not a "controlled substance offense."  U.S.S.G. § 4B1.2(b).

9

Moreover, if there were any doubt that under *Stinson* the plain text requires this result, the Supreme Court's recent decision in *Kisor v. Wilkie*, 139 S. Ct. 2400 (2019), renders this conclusion indisputable. *Stinson* held that the commentary deserves the same deference that courts give agencies' interpretations of their own rules. 508 U.S. at 44–45. In doing so, *Stinson* relied on the *Seminole Rock*/*Auer* doctrine, a line of cases governing this type of deference. *Id.* at 45 (citing *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414 (1945) (holding that courts should defer to an agency's interpretation of its own regulation "unless it is plainly erroneous or inconsistent with the regulation")); *see also Auer v. Robbins*, 519 U.S. 452, 461 (1997).

*Kisor* limited when courts will afford *Seminole Rock*/*Auer* deference. Although in *Kisor* the Supreme Court refused to jettison *Seminole Rock*/*Auer* deference entirely, it explicitly "reinforce[d] . . . the limits" of the doctrine, substantially "cabin[ing]" the circumstances under which courts defer to agencies' interpretations of their own rules.[3] 139 S. Ct. at 2408, 2418; *see also Romero v. Barr*, 937 F.3d 282, 291–92 (4th Cir. 2019) (summarizing *Kisor*). Under *Kisor*, "[f]irst and foremost, a court should not afford *Auer* deference unless the regulation is genuinely ambiguous . . . [after] exhaust[ing] all the 'traditional tools' of construction." 139 S. Ct. at 2415.

Thus, as *Kisor* instructs, if the inconsistency between U.S.S.G. § 4B1.2(b) and its Commentary were not apparent from the plain text, we would turn to the "traditional tools"

---

[3] *Kisor* cited *Stinson* in the course of establishing this "cabined" standard, 139 S. Ct. at 2411 n.3, making clear that these modifications to *Seminole Rock*/*Auer* deference apply equally to judicial interpretations of the Sentencing Commission's commentary.

10

of statutory construction to determine if U.S.S.G. § 4B1.2(b) is "genuinely ambiguous." *Id.* These "traditional tools" provide no support for the Government's contention that we should defer to the Commentary here. Indeed, the "traditional tool[]" of statutory construction most clearly applicable to this case, *expressio* (or *inclusio*) *unius est exclusio alterius* (roughly, "the inclusion of one means the exclusion of the other"), supports the contrary view in two ways. *See Winstead*, 890 F.3d at 1091.

First, U.S.S.G. § 4B1.2(b) itself provides that "'controlled substance offense' *means*" a detailed series of offenses, and attempt crimes do not appear within that definition. *See* U.S.S.G. § 4B1.2(b) (emphasis added). The traditional tools of construction — and common sense — dictate that "a definition which declares what a term 'means' excludes any meaning that is not stated." *Burgess v. United States*, 553 U.S. 124, 130 (2008) (cleaned up) (quoting *Colautti v. Franklin*, 439 U.S. 379, 392–93 n.10 (1979)).[4]

Second, the Sentencing Guidelines' parallel definition of "crime of violence" immediately prior to the definition of "controlled substance offense" explicitly includes attempt offenses. *See* U.S.S.G. § 4B1.2(a)(1) ("crimes of violence" include offenses involving the "*attempted* use . . . of physical force against the person of another" (emphasis added)). "Atextual judicial supplementation is particularly inappropriate when, as here, [the drafter] has shown that it knows how to adopt the omitted language or provision" in

---

[4] The Government resists this conclusion, noting that the Commentary uses the word "include," which is not exclusive. Gov't Br. at 12-13. True, but irrelevant, because U.S.S.G. § 4B1.2(b) itself uses "means," which unlike "include" *does* indicate exclusivity. The language in the Commentary cannot, by its own force, create an ambiguity in U.S.S.G. § 4B1.2(b). As we have explained before, the Government errs when it "skips past the text of § 4B1.2 to focus on its commentary." *Shell*, 789 F.3d at 340 (internal citation omitted).

11

nearby passages. *Rotkiske v. Klemm*, 140 S. Ct. 355, 361 (2019); *see also United States v. Haas*, 986 F.3d 467, 479 (4th Cir. 2021) ("[T]he canon of *expressio unius est exclusio alterius* . . . advises that when language is used in one part of a Guidelines provision and not in another, the exclusion is presumed intentional."). This is precisely the case here.

We would conclude that the Guideline excludes attempt offenses on the foregoing basis alone. But, as Judge Silberman noted in *Winstead*, if the meaning of U.S.S.G. § 4B1.2(b) nevertheless remained ambiguous at this point, "the rule of lenity . . . has some force" here. *Winstead*, 890 F.3d at 1092 n.14; *see also Nasir*, 2021 WL 5173485, at *9–11 (Bibas, J., concurring); *Mendoza-Figueroa*, 65 F.3d at 696–97 (Gibson, J., dissenting). Under the rule of lenity, courts construe an ambiguous provision in favor of a criminal defendant. *United States v. Hilton*, 701 F.3d 959, 968–69 (4th Cir. 2012).

We are also mindful that *Kisor* warned against judicial apathy regarding "the far-reaching influence of agencies and the opportunities such power carries for abuse." 139 S. Ct. at 2423. These concerns are even more acute in the context of the Sentencing Guidelines, where individual liberty is at stake. The Supreme Court has long held that "defining crimes and fixing penalties are legislative, not judicial, functions." *United States v. Evans*, 333 U.S. 483, 486 (1948). And although the Court has held that the Sentencing Guidelines do not violate this separation of powers, that is so because of the checks on the Sentencing Commission's authority. *United States v. Mistretta*, 488 U.S. 361, 393–94 (1989) ("Whatever constitutional problems might arise if the powers of the Commission were vested [solely in the Judiciary], the Commission is not a court . . . and is not controlled by or accountable to members of the Judicial Branch."). In fashioning the Sentencing

12

Guidelines, "the Commission is fully accountable to Congress, which can revoke or amend any or all of the Guidelines as it sees fit," and the Commission's "rulemaking is subject to . . . notice and comment requirements[.]" *Id.* In contrast, in fashioning commentary the Commission acts unilaterally, without that continuing congressional role so vital to the Sentencing Guidelines' constitutionality.

Thus, a holding that "the commentary can . . . add to [the Sentencing Guidelines'] scope" would "allow circumvention of the checks Congress put on the Sentencing Commission, a body that exercises considerable authority in setting rules that can deprive citizens of their liberty." *Nasir*, 982 F.3d at 159, *aff'd on remand*, 2021 WL 5173485. *See also Havis*, 927 F.3d at 385–86 (warning against "uniting legislative and judicial authority [in the Sentencing Commission] in violation of the separation of powers.").

Here, such a holding would not only allow the commentary to add offenses to the Sentencing Guidelines, but to add attempt offenses, which are generally thought of as less culpable than the relevant substantive crime. *See, e.g.*, *Bifulco v. United States*, 447 U.S. 381, 399 (1980) ("When one focuses on the fact that [a particular statute] penalizes attempts . . . it is not surprising that Congress would provide for less stringent sanctions to be imposed for violations of that provision than for a completed substantive offense."); U.S.S.G. § 2X1.1(b)(1) (providing for three-point offense level decrease for certain attempt offenses).

The Government's position would effectively empower the Commission unilaterally to set — not just interpret — the rules for the "application of the ultimate governmental power, short of capital punishment," without congressional involvement.

13

*Winstead*, 890 F.3d at 1092 (quoting *Mistretta*, 488 U.S. at 413 (Scalia, J., dissenting)). Particularly when, as in Campbell's case, a sentence enhancement potentially translates to additional years or decades in federal prison, we cannot forget that "[t]he structural principles secured by the separation of powers protect the individual as well." *Bond v. United States*, 564 U.S. 211, 222 (2011).

In short, the plain text of U.S.S.G. § 4B1.2(b) is inconsistent with the Commission's Commentary to that Guideline, and this is the only "reasonable construction of" U.S.S.G. § 4B1.2(b). *See Kisor*, 139 S. Ct. at 2415. In such circumstances, "a court has no business deferring to any other reading, no matter how much the [Government] insists it would make more sense." *Id.* Rather, when commentary is inconsistent with an unambiguous guideline, "the Sentencing Reform Act itself commands compliance with the guideline." *Stinson*, 508 U.S. at 43.

## IV.

In response, the Government lodges three arguments.

## A.

First, the Government's contends that we have previously resolved the question at issue here and circuit precedent now binds us. This argument is meritless. As multiple district courts within our circuit have recognized, "[t]his issue remains open in the Fourth Circuit." *United States v. Bond*, 418 F. Supp. 3d 121, 122 (S.D. W. Va. 2019); *see also United States v. Barbour*, No. 10 Cr. 69, 2021 WL 4991589, at *3 (W.D. Va. Oct. 27, 2021); *United States v. Faison*, No. 19 Cr. 27, 2020 WL 815699, at *8 (D. Md. Feb. 18, 2020). Moreover, all of the cases on which the Government relies predate *Kisor*. Even if

14

we had earlier resolved the question now before us, which we have not, *Kisor* would have at the very least undermined those cases' holdings. As we recently explained, a panel is not bound by a panel precedent where that prior decision has been "clearly undermine[d]" by an intervening Supreme Court decision. *Payne v. Taslimi*, 998 F.3d 648, 655 n.4 (4th Cir. 2021); *see also Nasir*, 2021 WL 5173485, at *8 ("Indeed, after the Supreme Court's recent decision in *Kisor v. Wilkie*, it is clear that [the Government's proposed] interpretation is not warranted." (internal citation omitted)).

But in fact, we would reach the same conclusion regardless of *Kisor*, because none of the Government's cases is on point. In the first, *United States v. Kennedy*, 32 F.3d 876, 890 (4th Cir. 1994), we held that the Sentencing Commission had the *statutory authority* to add inchoate offenses like conspiracy and attempt to the definition of a "controlled substance offense," not that the Commission's authority extends so far as to empower it to do so through the Commentary alone. In the second, *United States v. Mack*, 855 F.3d 581, 585 (4th Cir. 2017), we did not even address "controlled substance offense[s]," but merely held that an attempted "crime of *violence*" can be a career enhancement predicate; this is unsurprising, given that the "crime of violence" Sentencing Guideline (unlike the "controlled substance offense" Sentencing Guideline at issue here) explicitly includes attempt crimes. *Compare* U.S.S.G. § 4B1.2(a)(1) *with* U.S.S.G. § 4B1.2(b). In the third, *United States v. Dozier*, 848 F.3d 180, 183 n.2 (4th Cir. 2017), we explicitly noted that the question now before us was not at issue in that case.

And in the last two cases on which the Government relies, we dealt only with whether using a communication facility to facilitate a controlled substance offense in

15

violation of 21 U.S.C. § 843(b) constitutes a controlled substance offense, not whether the Commentary's addition of attempt crimes to U.S.S.G. § 4B1.2(b) is proper under *Stinson*. *See Allen*, 909 F.3d at 675 (citing a separate section of the Commentary providing that an § 843(b) conviction "is a 'controlled substance offense' if the . . . 'underlying offense' . . . is a 'controlled substance offense'"); *United States v. Walton*, 56 F.3d 551, 555 (4th Cir. 1995) ("The only question . . . is whether [a] conviction . . . for 'using the public telephone system in committing, causing and facilitating [a controlled substance offense]' . . . can be considered 'a controlled substance offense' for purposes of U.S.S.G. § 4B1.1.").[5]

At best for the government, the issues before us today "merely lurk in the record" of *Allen* and *Walton*, "neither brought to the attention of the court nor ruled upon[.]" *Richardson v. Kornegay*, 3 F.4th 687, 706 n.13 (4th Cir. 2021) (quoting *Webster v. Fall*, 266 U.S. 507, 511 (1925)). As we recently reiterated, such cases "are not to be considered as having been so decided as to constitute precedents." *Id*.

## B.

The Government's next argument relies on the word "prohibits" in U.S.S.G. § 4B1.2(b)'s definition of "controlled substance offense." The Government maintains that

---

[5] Moreover, both *Allen* and *Walton* dealt with aiding and abetting. *See Allen*, 909 F.3d at 675 ("Underlying our rationale [in *Walton*] was the long-standing rule that an aider and abettor to a crime generally is punishable under federal law as a principal."); *see also United States v. Norman*, 935 F.3d 232, 240 n.3 (4th Cir. 2019) ("The only question in *Walton* was whether a conviction for 'us[ing] the public telephone system in committing' a 'conspiracy to distribute cocaine' constituted 'aiding and abetting' under § 4B1.1."). As explained within, *see* note 2, in this case we have expressly reserved the question of whether a conviction under an aiding and abetting theory of primary liability for a substantive "controlled substance offense" is, like attempt, incapable of supporting a career offender enhancement.

16

"prohibits" implicitly incorporates all attempted versions of the forbidden conduct. Gov't Br. at 11-12. A few of our sister circuits have agreed. They reason: (1) U.S.S.G. § 4B1.2(b) itself defines "controlled substance offense" as an offense that "prohibits" various drug crimes; (2) "[t]o 'prohibit' means, among other things, 'to prevent [or] hinder'"; and therefore (3) because a "ban on attempting to distribute a controlled substance, for example, 'hinders' the distribution of the controlled substance," a law that 'prohibits' certain conduct also forbids any other conduct that might make the 'prohibited' conduct more likely to occur. *Richardson*, 958 F.3d at 154–55 (quoting *Prohibit, Oxford English Dictionary* (online ed. 2020)); *see also Lange*, 862 F.3d at 1295.

Respectfully, we disagree with this logic for several reasons. Initially, we think the Sixth Circuit is right as a matter of common sense: "the guideline's boilerplate use of the term 'prohibits' simply states the obvious: criminal statutes proscribe conduct." *Havis*, 927 F.3d at 386 n.4. Moreover, an expansive reading of the word "prohibits" raises an "elephants in mouseholes" problem – *i.e.*, it "alter[s] the fundamental details of a regulatory scheme in vague terms or ancillary provisions." *Whitman v. Am. Trucking Ass'ns, Inc.*, 531 U.S. 457, 468 (2001). Interpreting "prohibits" to include anything that makes the outlawed conduct more likely to occur would sweep into criminal statutes a vast swath of conduct based on a secondary dictionary definition. Finally, this argument has no logical endpoint. Criminalizing attempted drug distribution surely "hinders" actual drug distribution. But one could make the same argument about money laundering or even

17

loitering.[6] *Cf. City of Chicago v. Morales*, 527 U.S. 41, 46 (1999) (explaining that city enacted a loitering ordinance because of "escalation of violent and drug related crimes"). It cannot be the case that those too are "controlled substance offense[s]."

## C.

The Government's only remaining argument is that the "text of USSG § 4B1.2(b) does not exclude inchoate offenses, therefore the Commentary may properly add an inchoate offense to the definition of 'controlled substance offense.'" Gov't Br. at 11. A few circuits have also adopted this view. *See, e.g.*, *Smith*, 989 F.3d at 585 ("There cannot be a conflict because the text of § 4B1.2(a) does not tell us, one way or another, whether inchoate offenses are included or excluded." (citation omitted)); *Piper*, 35 F.3d at 617 ("Because the [commentary] with which we are concerned neither excludes any offenses expressly enumerated in the guideline, nor calls for the inclusion of any offenses that the guideline expressly excludes, there is no inconsistency.").

Again, we respectfully disagree. U.S.S.G. § 4B1.2(b) itself does not provide that if not expressly excluded from its definition of "controlled substance offense," an offense is included. Nor does the structure of U.S.S.G. § 4B1.2(b) suggest such a result. And this holding would ignore the "'traditional tools' of construction" we use to interpret the

---

[6] Or, to take an example from history, "[i]n 1931, the government famously prosecuted Al Capone for income tax evasion rather than far more serious crimes that it might have had difficulty proving." *United States v. Meadows*, 867 F.3d 1305, 1313 n.2 (D.C. Cir. 2017). In doing so, the Government took a major bootlegger off the streets and thereby "hindered" the distribution of controlled substances (in that case, alcohol under Prohibition). But the fact that Capone's arrest and conviction "hindered" distribution cannot transform tax evasion into a "controlled substance offense."

Sentencing Guidelines. *Kisor*, 139 S. Ct. at 2415; *see also Haas*, 986 F.3d at 479 ("[W]hen language is used in one part of a Guidelines provision and not in another, the exclusion is presumed intentional."). In short, the text of U.S.S.G. § 4B1.2(b), its structure, and those "traditional tools" of construction all counsel against doing exactly what the Government now urges: pencil in a few words because the statutory text does not say we cannot.

Moreover, this argument too has no logical endpoint. Of course the text of U.S.S.G. § 4B1.2(b) does not say we cannot add on attempted offenses, but the same thing goes for arson or securities fraud. Could the Commission include those as "controlled substance offense[s]" via commentary? Surely not. The Government's arguments cannot overcome the inconsistency between U.S.S.G. § 4B1.2(b) and its Commentary. Therefore, we follow the text of U.S.S.G. § 4B1.2(b). Doing so requires the conclusion that Campbell's West Virginia conviction is not a controlled substance offense and so cannot support a career offender sentence enhancement.

V.

For all of these reasons, we must vacate Campbell's sentence and remand for resentencing consistent with this opinion.

*VACATED AND REMANDED FOR*

*RESENTENCING*