In the

# United States Court of Appeals

### For the Seventh Circuit

———————

No. 20-1117

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

MARTEZ L. SMITH,

*Defendant-Appellant.*

———————

Appeal from the United States District Court for the
Central District of Illinois.
No. 18-cr-20037 — **Michael M. Mihm**, *Judge.*

———————

ARGUED OCTOBER 28, 2020 — DECIDED MARCH 3, 2021

———————

Before RIPPLE, WOOD, and BRENNAN, *Circuit Judges.*

BRENNAN, *Circuit Judge.* Illinois law enforcement agents received a tip from a confidential source claiming that Martez Smith had been dealing methamphetamine in Mattoon, Illinois. The agents conducted controlled buys between Smith and the source, and in the course of the investigation, requested a patrol officer stop Smith's vehicle. During that stop, the officer found marijuana, a marijuana grinder, and a firearm in Smith's vehicle. The officer arrested Smith and seized

the gun. A federal grand jury indicted Smith on one count of distributing methamphetamine and one count of possessing a firearm as a felon.

Represented by court-appointed counsel, Smith pleaded guilty to both counts. He then sought to retract his guilty plea, alleging ineffective assistance of counsel. The court denied Smith's motion to withdraw his guilty plea, rejected his request for an evidentiary hearing, and sentenced him on the two counts. On appeal, Smith challenges the district court's denial of his ineffective assistance of counsel claim and his career offender sentencing enhancement. We affirm the district court's decision in full.

**I**

**A**

In July 2018, Illinois law enforcement agents received a tip from a confidential source, who claimed he had been purchasing methamphetamine from Martez Smith in the Mattoon, Illinois area for the past two months. Based on this information, the agents arranged a series of controlled buys between Smith and the source.

The first controlled buy occurred on July 9, 2018. After the transaction, the source returned to the agents and gave them approximately 46 grams of "ice" methamphetamine that he had just purchased from Smith. With a failed attempt in the interim, the agents conducted another controlled buy on July 27. As instructed, the source text messaged Smith to purchase three ounces of methamphetamine. Smith replied "yea" and agreed on a time for the transaction. That day, the agents observed Smith driving as if to avoid surveillance while en route to the scheduled transaction and requested a nearby patrol

officer to pull him over. The officer identified Smith's vehicle, noticed it had "extremely dark window tinting," and ordered Smith to stop. When he attempted to measure the window tint, the officer realized that the batteries of his tint meter had failed, so he radioed other officers to bring him a new one.

During the approximately ten-minute wait, the officer learned that Smith's driver's license had been suspended. He asked Smith if he had any contraband in the vehicle. Smith said no. The officer then searched the vehicle and found a small amount of marijuana, a marijuana grinder, and a 9mm pistol with a 30-round extended magazine attached.[1] In a later interview, Smith admitted to possessing the firearm but denied selling methamphetamine.

**B**

In August 2018, a federal grand jury indicted Smith on two counts: (1) distribution of 50 grams or more of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B) ("Count 1"); and (2) possession of a firearm by a felon in violation of 18 U.S.C. § 922(g) ("Count 2"). Smith pleaded not guilty to both counts.

The district court appointed Attorney Johanes Maliza to represent Smith. With Maliza's representation, Smith changed his plea to guilty in November 2018. During the change-of-plea hearing before the magistrate judge, the parties agreed that, in addition to the felon-in-possession charge, Smith would plead guilty only to the lesser-included offense of distributing controlled substance between 5 and 50 grams

---

[1] Whether Smith consented to the vehicle search is disputed, but the answer to that question does not affect our decision.

because the laboratory results revealed that Smith sold less than 50 grams of methamphetamine.

The ensuing plea colloquy was thorough. Smith testified under oath in response to the court's questions. The magistrate judge asked Smith whether he had sufficient time to review the case with his counsel, whether he was satisfied with his counsel's representation, and whether he discussed the specific charges with his counsel. Smith answered "yes" to all three questions and admitted under oath that he distributed methamphetamine on July 9, 2018, and knowingly possessed a firearm as a felon on July 27, 2018. The court then asked Smith how he wanted to plead, to which Smith answered "guilty" on both counts.

Following his guilty plea but before sentencing, Smith filed two pro se motions seeking to withdraw his pleas based on ineffective assistance of counsel. Among various claims, Smith alleged that Maliza failed to investigate and to file a motion to suppress the firearm found in his car. Simultaneously, Maliza moved to withdraw as counsel, citing "a direct and irreconcilable conflict of interest" with Smith. The court granted Maliza's motion and appointed new counsel. By counsel, Smith then moved to withdraw his guilty plea and requested that the court hold an evidentiary hearing on Maliza's alleged ineffective assistance. The district court denied both requests and proceeded to sentencing.

The presentence investigation report recommended a career offender enhancement under U.S.S.G. § 4B1.1 for Smith's two prior convictions: a 2009 federal conviction for conspiring to possess with intent to distribute cocaine in violation of 21 U.S.C. § 846 and a 2013 Indiana conviction for attempted armed robbery. Smith objected to this enhancement, arguing

that his conspiracy conviction does not constitute a predicate "controlled substance offense" as required by the provision. Specifically, he asserted that the plain language of the Sentencing Guidelines does not include inchoate offenses like § 846 narcotics conspiracy.

Relying on *United States v. Adams*, 934 F.3d 720 (7th Cir. 2019), the district court rejected Smith's argument and held that § 846 conspiracy constitutes a predicate "controlled substance offense." It concluded that Smith qualified for the career-offender enhancement under § 4B1.1. The district court sentenced Smith to 214 months' imprisonment on Count 1 and 120 months' imprisonment on Count 2 to be served concurrently. Smith timely appealed to this court.

## II

### A

Smith first challenges the district court's denial of his motion to withdraw his guilty plea, which we review for an abuse of discretion. *United States v. Barr*, 960 F.3d 906, 917 (7th Cir. 2020).

A defendant may withdraw a guilty plea after the district court accepts the plea, but before it imposes a sentence, by showing "a fair and just reason for requesting the withdrawal." FED. R. CRIM. P. 11(d)(2)(B). Ineffective assistance of counsel serves as a "fair and just" reason for withdrawing a plea. *See United States v. Graf*, 827 F.3d 581, 583–84 (7th Cir. 2016); *see also Hurlow v. United States*, 726 F.3d 958, 967 (7th Cir. 2013) (noting that a plea that resulted from ineffective assistance of counsel cannot be knowing and voluntary). To establish ineffective assistance of counsel, a defendant must show that his counsel rendered deficient performance and

that the deficiency prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). In other words, a defendant must show that his counsel rendered objectively unreasonable performance and that, but for counsel's errors, the outcome would have been different. *Id.* We need not address both deficient performance and prejudice prongs "if the defendant makes an insufficient showing on one." *Id.* at 697; *see Armfield v. Nicklaus*, 985 F.3d 536, 548 (7th Cir. 2021) (same).

In the guilty plea context, we apply the modified *Strickland* analysis articulated in *Hill v. Lockhart*, 474 U.S. 52 (1985). *See Gish v. Hepp*, 955 F.3d 597, 605 (7th Cir. 2020). Under *Hill*, the deficient performance prong remains largely unchanged. A defendant must show that his counsel rendered objectively unreasonable performance and "performed seriously below professional standards." *United States v. Williams*, 698 F.3d 374, 386 (7th Cir. 2012). On the prejudice prong, a defendant must show a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Lee v. United States*, 137 S. Ct. 1958, 1965 (2017) (quoting *Hill*, 474 U.S. at 59). The prejudice inquiry into counsel's failure to investigate "will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea." *Hill*, 474 U.S. at 59 (adding that "[t]his assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial").

A guilty plea, however, "should not lightly be withdrawn." *United States v. Brown*, 973 F.3d 667, 715 (7th Cir. 2020). Courts must "not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies." *Lee*, 137 S. Ct. at

1967. We instead "look to contemporaneous evidence to substantiate a defendant's expressed preferences" and only allow a withdrawal if we are convinced that the defendant would have pleaded differently. *Id.*

Smith alleges three deficiencies in Maliza's performance: (1) failure to investigate and file a motion to suppress the firearm found in the car; (2) pressure to hastily plead guilty; and (3) general unfamiliarity with the facts of the case. The district court denied these claims as either lacking merit or otherwise undermined by the record. We agree and analyze each of Smith's arguments in turn.

*Motion to Suppress.* When the alleged deficiency is based on counsel's failure to move to suppress evidence, a defendant must "prove the motion was meritorious." *Long v. United States*, 847 F.3d 916, 920 (7th Cir. 2017) (internal quotation marks omitted). But here any alleged deficiency by Maliza matters only if Smith could show that suppressing the firearm evidence likely would have changed the outcome of the trial. *Hill*, 474 U.S. at 59.

Smith claims that a motion to suppress would have succeeded because the patrol officer did not have consent or a warrant to search his vehicle. Warrantless searches are per se unreasonable under the Fourth Amendment, unless an exception applies. *United States v. Kizart*, 967 F.3d 693, 695 (7th Cir. 2020) (citing *Arizona v. Gant*, 556 U.S. 332, 338 (2009)). The record suggests that the automobile exception applies here. Under the automobile exception, an officer may search a vehicle without a warrant if there is probable cause. *Kizart*, 967 F.3d at 695; *see United States v. Sands*, 815 F.3d 1057, 1061–62 (7th Cir. 2015) ("A warrantless arrest is constitutionally permissible if supported by probable cause … ."). Probable cause

exists "if, given the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Eymann*, 962 F.3d 273, 286 (7th Cir. 2020) (internal quotation marks omitted).

The patrol officer here had probable cause to stop Smith and search his vehicle. Law enforcement agents had already conducted a controlled buy, and they had scheduled another on the day of the arrest. The agents even had text message evidence detailing the transaction planned for later that day. Smith was also driving suspiciously moments before the officer stopped him and had illegally tinted windows on his car. And although the officer may not have known all the facts supporting probable cause, he was acting at the direction of the agents who did. *See United States v. Khan*, 937 F.3d 1042, 1052 (7th Cir. 2019) (noting that the collective knowledge doctrine "permits a stop at the direction of, or based on information relayed from, another law enforcement agency"); *see also United States v. Nicksion*, 628 F.3d 368, 376–77 (7th Cir. 2010) (finding that the collective knowledge of law enforcement provided ample probable cause for officers to stop and arrest the defendant and search his vehicle). The totality of the circumstances leading up to the stop demonstrates a fair probability that Smith's vehicle contained contraband. The officer therefore had probable cause to stop Smith and to search his vehicle. Without more, Smith cannot establish that he would have succeeded on his motion to suppress the firearm evidence.

*Time Pressure.* Smith also contends that Maliza rendered ineffective assistance by pressuring him to take the guilty plea. He alleges Maliza did so in part by telling him that the government would file a superseding indictment with an

additional charge if Smith did not plead guilty before the grand jury reconvened. The district court dismissed Smith's claims as conclusory or otherwise undermined by the record noting that "that there was no pressure for the defendant to plead immediately."

We give special weight to a defendant's sworn testimony in a Rule 11 plea colloquy. *See Graf*, 827 F.3d at 584 ("A defendant's motion to withdraw is unlikely to have merit if it seeks to dispute his sworn assurances to the court."). That testimony is presumed true, and the defendant bears a heavy burden to overcome this presumption. *See United States v. Chavers*, 515 F.3d 722, 724 (7th Cir. 2008). Smith expressly acknowledged during his plea colloquy that he had sufficient time to discuss the case with Maliza. As the district court found, the magistrate judge "was careful to give the defendant several opportunities where he could have said that he was being pressured … [and] sufficient opportunity to say that he wanted more time." At one point, Maliza even offered to adjourn the hearing to allow time to file corrected information, which cuts against Smith's argument that his counsel had rushed him to plead guilty.

Smith cannot show prejudice. He fails to demonstrate a reasonable probability that, but for Maliza's pressure, he would not have pleaded guilty. The district court was correct to reject this claim.

*Counsel's Lack of Familiarity.* Smith next asserts Maliza rendered ineffective assistance because he lacked familiarity with the facts of the case, emphasizing that the public defender was "confused and unfamiliar with the relevant facts." To support this claim, Smith points to a portion of the change-of-plea hearing transcript where Maliza appears to fumble with his

words: "Again, Your Honor, I haven't seen as much. There was some stuff that I did—I don't, I don't think I noticed, but the—certainly, the evidence that pertains to the elements … the essential elements of the crime, yes." Smith also complains that he "himself had to speak up to correct his attorney's misrepresentations."

Smith's challenge falls short of demonstrating ineffective assistance of counsel. "An ineffective assistance of counsel claim cannot stand on a blank record, peppered with the defendant's own unsupported allegations of misconduct." *United States v. Hodges*, 259 F.3d 655, 660 (7th Cir. 2001). The district court noted that Smith took Maliza's statements "out of context" and read "far too much into them." The hearing transcript shows that Maliza made the spotlighted statement to confirm that the government presented evidence that met the essential elements of the drug and firearm charges while disagreeing with some of the details. Viewing the statement in context, the district court recognized that Maliza actually demonstrated familiarity with the case. There is no support in the record for the assertion that Maliza made a misrepresentation or that suggests his unfamiliarity with the case. The district court therefore properly exercised its discretion to conclude that Smith's arguments lack record support and that he was not prejudiced.

**B**

Smith insists that the district court erred by denying his request for an evidentiary hearing to support his motion to withdraw his guilty plea. We review the district court's decision not to hold an evidentiary hearing for abuse of discretion, *see United States v. Jones*, 381 F.3d 615, 618 (7th Cir. 2004), and its "factual findings, including whether the defendant

knowingly and voluntarily entered the plea, for clear error." *United States v. Perillo*, 897 F.3d 878, 883 (7th Cir. 2018).

A motion to withdraw a plea does not automatically entitle a defendant to an evidentiary hearing because "[w]hether to hold a hearing on the plea's validity is a matter left to the trial court's sound discretion." *United States v. Collins*, 796 F.3d 829, 834 (7th Cir. 2015). To illustrate, an evidentiary hearing is not required "if the petitioner makes allegations that are vague, conclusory, or palpably incredible, rather than detailed and specific." *Gaylord v. United States*, 829 F.3d 500, 506–07 (7th Cir. 2016) (internal quotation marks omitted). A district court need not hold an evidentiary hearing if the defendant fails to offer substantial evidence "or if the allegations advanced in support of the motion are conclusory or unreliable." *Collins*, 796 F.3d at 834.

The district court did not abuse its discretion by denying Smith's request for an evidentiary hearing. The only argument that it found as "possibly not a conclusory allegation" was the potential success of the motion to suppress. But the district court explained that the government provided "the uncontested proffer" of independent probable cause to stop Smith and search his car. Because Smith's motion to suppress would not have been successful, no evidentiary hearing was necessary.

### III

Smith next challenges his career offender enhancement. According to Smith, his prior conviction for conspiring to traffic cocaine, in violation of 21 U.S.C. § 846, does not constitute a predicate "controlled substance offense" under U.S.S.G. § 4B1.2. We review the district court's application of the

Sentencing Guidelines de novo. *United States v. Lewis*, 842 F.3d 467, 476 (7th Cir. 2016).

We look first to the text of the guidelines provisions that Smith disputes. Under § 4B1.1, a defendant is a career offender if: (1) he was at least 18 years old when he committed the offense; (2) the instant offense is a crime of violence or a controlled substance offense; and (3) he "has at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1(a). Section 4B1.2, in relevant part, defines "controlled substance offense" as "an offense under federal or state law … that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense." U.S.S.G. § 4B1.2. Application Note 1 to § 4B1.2 defines "controlled substance offense" to include aiding and abetting, conspiring, and attempting to commit such offenses. U.S.S.G. § 4B1.2 cmt. n.1. Smith contends that Application Note 1 is an improper expansion of § 4B1.2.

Courts treat the application notes to the Sentencing Guidelines like an agency's interpretation of its own rules. *See Stinson v. United States*, 508 U.S. 36, 44–45 (1993). In *Stinson*, the Supreme Court held that courts must give application notes "controlling weight." *Id.* at 45 (quoting *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414 (1945)). A corresponding application note is binding authority "unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." *Id.* at 38; *see United States v. Tate*, 822 F.3d 370, 375 (7th Cir. 2016) (same). We apply the application notes as "authoritative glosses on

the Guidelines, unless the notes conflict with the text." *United States v. Raupp*, 677 F.3d 756, 759 (7th Cir. 2012), *overruled on other grounds by United States v. Rollins*, 836 F.3d 737 (7th Cir. 2016).

A split of authority exists among many of the circuits as to whether courts are to defer to Application Note 1 when applying § 4B1.2. In *United States v. Winstead*, the D.C. Circuit recognized a conflict between the text of § 4B1.2 and Application Note 1. 890 F.3d 1082 (D.C. Cir. 2018). It applied the interpretative canon *expressio unius est exclusio alterius* to note that § 4B1.2 "presents a very detailed 'definition' of controlled substance offense that clearly excludes inchoate offenses." *Id.* at 1091. Given that the text of § 4B1.2 does not expressly include inchoate offenses, the D.C. Circuit concluded that Application Note 1 improperly expands the provision's scope and declined to recognize an attempt crime as a controlled substance offense. *Id.* at 1091–92.

Similarly, the Sixth Circuit in *United States v. Havis* did not extend the definition of controlled substance offense to include attempt crimes. 927 F.3d 382 (6th Cir. 2019) (en banc) (per curiam). It emphasized that the application notes to the Sentencing Guidelines "serve[] only to *interpret* the Guidelines' text, not to replace or modify it." *Id.* at 386 (emphasis in original). Because Application Note 1 adds to § 4B1.2's textual definition, rather than interprets it, the Sixth Circuit found the more expansive construction impermissible. *Id.* at 386–87. Finally, the Third Circuit concluded the same in *United States v. Nasir*, 982 F.3d 144, 159–60 (3d Cir. 2020) (en banc). In addition to the *expressio unius* argument, that court raised a separation-of-powers concern—namely, that deferring to the application notes circumvents "the checks Congress put on the

Sentencing Commission." *Id.* at 159. The Third Circuit "conclude[d] that inchoate crimes are not included in the definition of 'controlled substance offenses' given in section 4B1.2(b)." *Id.* at 160. Smith relies on these cases to support his position.

Our court's precedent holds otherwise, and we see no reason here to diverge from it. In *United States v. Adams*, we held that the term "controlled substance offense" encompasses inchoate offenses. 934 F.3d at 729–30. There, the defendant challenged the sentencing enhancement under U.S.S.G. § 2K2.1, which raises the base offense level for a felon-in-possession conviction when the defendant also has a prior conviction for a controlled substance offense. *Id.* at 727. Section 2K2.1's Application Note 1 references § 4B1.2's Application Note 1 for the definition of "controlled substance offense." U.S.S.G. § 2K2.1 cmt. n.1 (noting that "'[c]ontrolled substance offense' has the meaning given that term in § 4B1.2(b) and Application Note 1 of the Commentary to § 4B1.2"). We concluded that § 4B1.2's Application Note 1 is authoritative and that "controlled substance offense" includes inchoate offenses. *Adams*, 934 F.3d at 729–30. In reaching this conclusion, we relied on *Raupp*, which deferred to Application Note 1 when applying § 4B1.2 and found no conflict between them. 677 F.3d at 759. ("There cannot be a conflict because the text of § 4B1.2(a) does not tell us, one way or another, whether inchoate offenses are included or excluded."). Several other circuits agree. *See, e.g.*, *United States v. Lange*, 862 F.3d 1290, 1294–96 (11th Cir. 2017); *United States v. Nieves-Borrero*, 856 F.3d 5, 9 (1st Cir. 2017); *United States v. Chavez*, 660 F.3d 1215, 1228 (10th Cir. 2011); *United States v. Mendoza-Figueroa*, 65 F.3d 691, 694 (8th Cir. 1995) (en banc).

Smith attempts to distinguish *Adams* from this case but to no avail. He emphasizes that *Adams* dealt with a sentencing enhancement under § 2K2.1, whereas here we address a sentencing enhancement under § 4B1.1. But to distinguish *Adams* would require us to find that there is a conflict between § 4B1.2 and Application Note 1 when interpreting § 4B1.1 but that no such conflict exists when interpreting § 2K2.1. We cannot reconcile Smith's position with our holding in *Adams*.

That brings us to our final issue: does § 4B1.2's Application Note 1 encompass § 846 conspiracy under the categorical approach? The categorical approach asks courts to look to the generic elements of a crime, rather than the facts underlying how the crime was committed, when determining whether a prior conviction is a "controlled substance offense." *United States v. Smith*, 921 F.3d 708, 712 (7th Cir. 2019). A "generic" version of an offense means "the offense as commonly understood." *Mathis v. United States*, 136 S. Ct. 2243, 2247 (2016). "If the elements of the crime of conviction are the same as, or narrower than, the elements of the generic version of the offense, the crime of conviction qualifies as a predicate offense." *Smith*, 921 F.3d at 712 (citing *Mathis* 136 S. Ct. at 2247–48).

Smith thinks that under the categorical approach, his § 846 conspiracy conviction does not qualify as a predicate "controlled substance offense." He points to decisions from other circuits that have concluded Application Note 1 does not include § 846 conspiracy. *See, e.g.*, *United States v. McCollum*, 885 F.3d 300, 308–09 (4th Cir. 2018); *United States v. Martinez-Cruz*, 836 F.3d 1305, 1314 (10th Cir. 2016). These decisions found generic conspiracy to require an overt act in furtherance of the conspiracy. Because § 846 lacks an overt-act requirement, Smith asserts, it "criminalizes a broader range of conduct than

that covered by generic conspiracy." He adds that a § 846 of-fense does not fall within the ambit of § 4B1.2's definition of "controlled substance offense."

The Second Circuit recently took a different approach in *United States v. Tabb*, 949 F.3d 81 (2d Cir. 2020). The defendant in *Tabb* argued that Application Note 1 covers only "generic" conspiracy, and by implication, excludes the broader § 846 narcotics conspiracy. *Id.* at 88. The Second Circuit disagreed. It first explained that generic conspiracy encompasses § 846 conspiracy because "[t]he essence of a conspiracy is an agree-ment by two or more persons to commit an unlawful act." *Id.* Although it recognized that common law often required an overt act as an element of a conspiracy offense, the Second Circuit found the requirement unnecessary given that "Con-gress has chosen to eliminate this requirement in the case of several federal crimes, most notably narcotics conspiracy." *Id.* (citing *United States v. Shabani*, 513 U.S. 10, 14–15 (1994)). The court concluded that reading Application Note 1 to cover § 846 narcotics conspiracy would best preserve the internal consistency of the Sentencing Guidelines. *Id.* (noting that the defendant's reading would "require finding that term 'con-spiracy' includes Section 846 narcotics conspiracy in some parts of the guidelines, but not others" (citations omitted)). Other circuits have drawn similar conclusions. *See, e.g., United States v. Rivera-Constantino*, 798 F.3d 900, 903–94 (9th Cir. 2015); *United States v. Rodriguez-Escareno*, 700 F.3d 751, 753–54 (5th Cir. 2012).

We agree that Application Note 1 encompasses § 846 con-spiracy. First, the plain language of Application Note 1 unam-biguously includes conspiracy as a "controlled substance of-fense." U.S.S.G. § 4B1.2 cmt. n.1. We find no reason to

construe the word "conspiring" in Application Note 1 to exclude § 846 conspiracy, especially given that an overt act is not always a required element in the narcotics conspiracy context.

Second, the narrow reading that Smith proposes would lead to conflicting textual and structural consequences. Under his reading, a § 846 conspiracy would constitute a controlled substance offense when interpreting § 2K2.1, as we do in *Adams*, but not when interpreting § 4B1.1, as we do here. It would also mean that the Sentencing Commission, when it included the term "conspiring" in § 4B1.2's Application Note 1, intended to exclude *federal* conspiracy from the *federal* Sentencing Guidelines. *See Tabb*, 949 F.3d at 88 (citing *Rivera-Constantino*, 798 F.3d at 904). That cannot be, so we are not persuaded by Smith's interpretation. Considering that "identical words and phrases within the same statute should normally be given the same meaning," *Powerex Corp. v. Reliant Energy Servs., Inc.*, 551 U.S. 224, 232 (2007), we conclude that reading § 4B1.2's Application Note 1 to include § 846 conspiracy would best preserve the internal consistency of the Sentencing Guidelines and avoid any textual or structural pitfalls. Smith's § 846 conspiracy conviction is thus a valid predicate offense under § 4B1.1, and the district court correctly applied the career offender enhancement to his sentence.

## IV

For these reasons, we AFFIRM the district court's decision.