In the

# United States Court of Appeals
## for the Seventh Circuit

No. 22-2014

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

KEITH WHITE,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:17CR00135-001 — **Sarah Evans Barker**, *Judge.*

ARGUED JANUARY 12, 2023 — DECIDED APRIL 2, 2024

Before SYKES, *Chief Judge*, and EASTERBROOK and RIPPLE, *Circuit Judges*.

SYKES, *Chief Judge*. While serving a state sentence at the Pendleton Correctional Facility in Indiana, Keith White and another inmate ran a heroin-distribution ring inside the prison. After three inmates fatally overdosed, the FBI launched an investigation, and White and three accomplices were indicted for conspiracy to distribute heroin. White

pleaded guilty; this is his second appeal challenging his sentence.

White's criminal history includes two Indiana felony convictions for cocaine dealing, which raised the statutory penalties for his heroin conviction, *see* 18 U.S.C. § 841(b)(B)(i), and increased his base offense level under the career-offender provision of the Sentencing Guidelines, *see* U.S.S.G. § 4B1.1–.2. In his first appeal, White successfully challenged the statutory enhancement under *United States v. Ruth*, 966 F.3d 642 (7th Cir. 2020). But *Ruth* did not affect his status as a career offender under the Guidelines.

At his resentencing hearing, White raised a new objection to the career-offender guideline based on the Supreme Court's intervening decision in *Kisor v. Wilkie*, 139 S. Ct. 2400 (2019). As relevant here, the guideline applies when a defendant is convicted of a felony "controlled substance offense" and has two or more prior felony convictions for a "controlled substance offense." U.S.S.G. § 4B1.1(a). Under the version of the Guidelines then in effect, the definition of "controlled substance offense" did not address inchoate offenses like conspiracy. *See id.* § 4B1.2(b) (Nov. 1, 2021). But the commentary did: Application Note 1 explained that the term "controlled substance offense" includes "aiding and abetting, conspiring, and attempting to commit such offenses." *Id.* cmt. n.1.

Applying the Supreme Court's decision in *Stinson v. United States*, 508 U.S. 36 (1993), we have repeatedly deferred to Application Note 1 as the Sentencing Commission's authoritative interpretation of the career-offender guideline. *See United States v. Smith*, 989 F.3d 575, 583–85 (7th Cir. 2021); *United States v. Adams*, 934 F.3d 720, 727–30 (7th Cir. 2019);

*United States v. Raupp*, 677 F.3d 756, 758–59 (7th Cir. 2012) (*overruled on other grounds by United States v. Rollins*, 836 F.3d 737, 743 (7th Cir. 2016) (en banc)). Bound by circuit precedent, the district judge rejected White's argument and again applied the career-offender guideline.

White now asks us to overrule this circuit caselaw and remand for resentencing without the career-offender enhancement. Relying on *Kisor*, he argues that the definition of "controlled substance offense" in § 4B1.2(b) is clear on its face and does not mention inchoate offenses. It follows, he says, that Application Note 1 deserves no deference because the guideline's text unambiguously excludes inchoate offenses. As we noted in *Smith*, this question has divided the circuits, *see* 989 F.3d at 584, and the disagreement has only deepened since then. In *Smith* we declined to switch sides in the circuit split. *Id.* We do so again here. *Kisor* did not disturb *Stinson* or our circuit precedent.[1]

White argues in the alternative that Application Note 1 is invalid under the "major questions doctrine" and the Supreme Court's decision in *West Virginia v. EPA*, 597 U.S. 697 (2022). This argument is meritless. The major questions doctrine does not apply. We therefore affirm the judgment.

## I. Background

In 2014 White was serving a state sentence for cocaine trafficking at the Pendleton Correctional Facility in Indiana. He and fellow inmate Elonzo Williams operated a long-running drug-trafficking ring inside the prison, distributing

---

[1] As we explain later in this opinion, the Sentencing Commission recently amended § 4B1.2, moving Application Note 1 to the text of the guideline.

heroin to other inmates. Williams's sister Lettie served as the courier; she picked up distribution quantities of heroin from White's sources in Chicago and delivered the drugs to Karen Jennings, a prison kitchen worker. Jennings smuggled the drugs into the prison, and White and Williams distributed user quantities to inmates.

After a series of overdoses—three of them fatal—the FBI opened an investigation. Inmates identified White and Williams as their heroin sources. Investigators then reviewed recorded phone calls and discovered that White had used prison phones to organize the pickup and delivery of multiple batches of heroin between 2014 and 2015.

White and his three accomplices were indicted in 2017 for conspiracy to distribute 100 grams or more of heroin. 21 U.S.C. §§ 841(a)(1), 846. Based on his history of drug offenses—specifically, his two Indiana convictions for cocaine dealing—the government filed an information under 21 U.S.C. § 851, which raised the statutory penalties to a minimum of 10 years in prison and a maximum of life (up from the baseline of 5 to 40 years). *See* § 841(b)(1)(B)(i).

White's case was dormant for more than a year, but he eventually pleaded guilty. In addition to the elevated statutory penalties, he faced an enhanced offense level under the career-offender guideline based on his prior drug convictions. *See* U.S.S.G. § 4B1.1–.2. With a final offense level of 34 and a criminal history category of VI, his advisory Guidelines range was 262 to 327 months in prison. In 2019 the district judge imposed a sentence of 12 years—2 years above the statutory minimum but well below the Guidelines range.

White asked his lawyer to file an appeal, but she did not follow through. Based on his lawyer's error, the judge granted White's motion for relief under 28 U.S.C. § 2255 and permitted him to file a late appeal.

In the meantime, we issued our decision in *Ruth*, which held that an Illinois conviction for cocaine dealing is not a predicate for enhanced penalties under §§ 841(b)(1) and 851 because Illinois's statutory definition of cocaine is categorically broader than the parallel definition under federal law. *Ruth*, 966 F.3d at 646–50. The government conceded that under *Ruth*, White's convictions under Indiana's cocaine-trafficking statute could not support the statutory enhancement under § 841(b)(1)(B). That concession had the effect of dropping the statutory penalties to the baseline of 5 to 40 years, so the parties filed a joint motion to vacate the sentence. We granted the motion and remanded for resentencing.

*Ruth* did not eliminate White's designation as a career offender, but the change in the statutory maximum reduced his base offense level from 37 to 34, *see* U.S.S.G. § 4B1.1(b). That, in turn, resulted in a new adjusted offense level of 31. Because he remained a career offender, his criminal-history category did not change. With the recalculated total offense level of 31 and the same criminal-history category of VI, White's new Guidelines range was 188 to 235 months in prison.

Back before the district judge, White raised a new objection to the career-offender enhancement based on the Supreme Court's intervening decision in *Kisor*. To understand his argument requires a brief explanation of how this familiar provision works. As its name implies, the guideline

applies to recidivists; it raises the base offense level for defendants who repeatedly commit certain kinds of felony offenses. The guideline applies when (1) the offense of conviction is a felony "crime of violence" or "controlled substance offense" and (2) the defendant has two or more prior felony convictions for a "crime of violence" or "controlled substance offense." *Id.* § 4B1.1(a).

Until very recently, the definitions of "crime of violence" and "controlled substance offense" in the career-offender guideline did not address inchoate offenses like conspiracy. *Id.* § 4B1.2(a)–(b) (Nov. 1, 2021). But the Sentencing Commission explained in the commentary that the terms "crime of violence" and "controlled substance offense" include "the offenses of aiding and abetting, conspiring, and attempting to commit such offenses." § 4B1.2 cmt. n.1. Based on the Supreme Court's decision in *Stinson*, 508 U.S. at 38, we have long deferred to Application Note 1 as the Sentencing Commission's authoritative interpretation of the career-offender guideline. *See Smith*, 989 F.3d at 583–85; *Adams*, 934 F.3d at 727–30; *Raupp*, 677 F.3d at 758–59.

At resentencing White argued that the Supreme Court's recent decision in *Kisor* unsettled our circuit caselaw regarding the validity of Application Note 1. Drawing on *Kisor*'s less deferential approach to agencies' interpretations of their own rules, White maintained that because the definition of "controlled substance offense" in § 4B1.2(b) does not itself mention inchoate offenses, the guideline is clear on its face and courts may not consider—much less defer to— Application Note 1.

Bound by circuit precedent, the judge rejected White's argument and once again applied the career-offender Guide-

line. But she also determined that its effect on White's guidelines range may have overstated his culpability. For that reason and several others, she imposed a below-Guidelines sentence of 10 years.

## II. Discussion

On appeal White challenges his career-offender designation on two grounds, both centering on the validity of Application Note 1 to § 4B1.2. (The Sentencing Commission recently amended § 4B1.2; we refer here to the November 1, 2021 version of the Guidelines.) White's main argument reiterates his contention that *Kisor*'s modification of agency deference implicates *Stinson* and unsettles our circuit caselaw deferring to Application Note 1. In the alternative, he argues that the application note is invalid under the "major questions doctrine" and the Supreme Court's decision in *West Virginia v. EPA*, 597 U.S. 697.

### A. *Kisor* and Application Note 1 to § 4B1.2

Until recently, § 4B1.2—which defines the terms "crime of violence" and "controlled substance offense" as used in the career-offender guideline—was silent on whether convictions for inchoate offenses count as career-offender predicates. Instead, the Sentencing Commission addressed the subject of inchoate offenses in the commentary. In Application Note 1 to § 4B1.2, the Commission instructed sentencing courts that the terms "'[*c*]*rime of violence*' and '*controlled substance offense*' include the offenses of aiding and abetting, conspiring, and attempting to commit such offenses." § 4B1.2 cmt. n.1.

Under the Supreme Court's decision in *Stinson*, the Commission's commentary interpreting or explaining a

guideline is authoritative and entitled to controlling weight "unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." 508 U.S. at 38. Applying *Stinson*, we have repeatedly given Application Note 1 controlling weight as an authoritative interpretation of the term "controlled substance offense" in § 4B1.2. *Smith*, 989 F.3d at 585; *see also Adams*, 934 F.3d at 729 (finding no conflict between the "application note's inclusion of conspiracy" and the "text of the Guideline itself"); *Raupp*, 677 F.3d at 759. Most other circuits agreed.

In *Smith*—the most recent in this line of cases— we acknowledged a newly emerging circuit split on the validity of Application Note 1 but declined an invitation to change our position. 989 F.3d at 584–85. The disagreement among the circuits has widened since *Smith* as more courts of appeals have reconsidered their *Stinson*-based precedents deferring to Application Note 1. Some of these shifts were occasioned by the Supreme Court's 2019 decision in *Kisor*; others slightly predated it.

Here's the current lineup: Six circuits have held that Application Note 1 impermissibly expands § 4B1.2's definition of "controlled substance offense." *See United States v. Castillo*, 69 F.4th 648 (9th Cir. 2023); *United States v. Dupree*, 57 F.4th 1269 (11th Cir. 2023) (en banc); *United States v. Campbell*, 22 F.4th 438 (4th Cir. 2022); *United States v. Nasir*, 982 F.3d 144 (3d Cir. 2020) (en banc), *vacated on other grounds*, 142 S. Ct. 56 (2021) (mem.)); *United States v. Havis*, 927 F.3d 382 (6th Cir. 2019) (en banc) (per curiam); *United States v. Winstead*, 890 F.3d 1082 (D.C. Cir. 2018).

Six circuits (including ours) have declined to reconsider circuit precedent deferring to Application Note 1. *See United States v. Vargas*, 74 F.4th 673, 689–90 (5th Cir. 2023) (en banc) (holding that *Stinson* governs and "requires us to defer" to Application Note 1); *United States v. Maloid*, 71 F.4th 795, 805 (10th Cir. 2023) (affirming precedent upholding the validity of Application Note 1's inclusion of conspiracy in the definition of "crime of violence"); *Smith*, 989 F.3d at 585 (noting the emerging circuit split but adhering to circuit precedent, seeing "no reason here to diverge from it"); *United States v. Jefferson*, 975 F.3d 700, 708 (8th Cir. 2020) (acknowledging *Winstead* and *Havis* but adhering to circuit precedent holding Application Note 1 valid); *United States v. Lewis*, 963 F.3d 16, 18, 25 (1st Cir. 2020) (adhering to circuit precedent finding Application Note 1 "authoritative" while acknowledging the "question is close"); *United States v. Richardson*, 958 F.3d 151, 154 (2d Cir. 2020) ("Application Note 1 is not 'inconsistent with, or a plainly erroneous reading of[,]' § 4B1.2." (quoting *Stinson*, 508 U.S. at 38)).

We require a compelling reason to overrule circuit precedent. *Campbell v. Kallas*, 936 F.3d 536, 544 (7th Cir. 2019). White urges us to change course based on the Supreme Court's decision in *Kisor v. Wilkie*, which clarified the deference owed to an agency's interpretation of its own regulations under the rule of *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 413–14 (1945).

In *Kisor* the Court considered whether to overrule *Seminole Rock* and "discard[] the deference" it "give[s] to agencies."[2] 139 S. Ct. at 2408. The Court declined to do so but

---

[2] The deference doctrine announced in *Seminole Rock* is also referred to as "*Auer* deference." *See Auer v. Robbins*, 519 U.S. 452 (1997). The Supreme

"reinforce[d]" *Seminole Rock*'s limitations. *Id.* Specifically, the Court held that courts should defer to an agency's interpretation of a regulation only in cases of "genuine ambiguity" after first "exhaust[ing] all the traditional tools of construction." *Id.* at 2415 (quotation marks omitted). If a regulation is genuinely ambiguous, the court should defer to the agency's interpretation only if it is reasonable—that is, only if the interpretation "come[s] within the zone of ambiguity the court has identified." *Id.* at 2415–16. Finally, the court must determine "whether the character and context of the agency interpretation entitles it to controlling weight." *Id.* at 2416. *Kisor* identified some factors that inform this last step in the restated deference formula. First, the interpretation "must be the agency's authoritative or official position" rather than an "ad hoc statement not reflecting the agency's views." *Id.* (quotation marks omitted). Second, the interpretation "must in some way implicate [the agency's] substantive expertise." *Id.* at 2417. And third, the agency's reading "must reflect fair and considered judgment." *Id.* (quotation marks omitted).

It's fair to say that *Kisor*'s refinement of *Seminole Rock* reduced the level of deference owed to an agency's interpretation of its own regulations. But *Kisor*'s effect on *Stinson* is unclear. *Stinson* borrowed from *Seminole Rock* because the Court viewed the Guidelines commentary as in some respects "akin to an agency's interpretation of its own legislative rules." 508 U.S. at 45. But the Court also cautioned that "the analogy is not precise." *Id.* at 44. The Sentencing Commission is not an executive agency; it is an independent commission within the judicial branch. *See* 28 U.S.C. § 991(a).

---

Court discussed *Auer* and *Seminole Rock* interchangeably in *Kisor*, so the terminology makes no difference here.

And its statutory charge is unique in ways that affect the deference calculus. *See Stinson*, 508 U.S. at 44–45; *Vargas*, 74 F.4th at 682–83; *Maloid*, 71 F.4th at 806–07.

Perhaps most importantly, the Court said nothing in *Kisor* to suggest that it was altering *Stinson*. Indeed, *Stinson* is cited only in a footnote along with 16 other cases as examples of "decisions applying *Seminole Rock* deference." *Kisor*, 139 S. Ct. at 2411 n.3. Because *Kisor* did not address *Stinson* in any meaningful way, we do not see a compelling reason to reconsider our circuit precedent treating Application Note 1 as authoritative gloss on the career-offender guideline.

Indeed, the Supreme Court has instructed us to resist invitations to find its decisions overruled by implication. *Mallory v. Norfolk S. Ry. Co.*, 143 S. Ct. 2028, 2038 (2023). *Kisor* did not purport to modify *Stinson* (much less overrule it). That's reason enough for us to stay the course. When a Supreme Court decision is directly controlling, our job is to follow it, "leaving to th[e] Court the prerogative of overruling its own decisions." *Id.* (quotation marks omitted). That's true even if "intervening decisions have eroded [its] foundation." *Price v. City of Chicago*, 915 F.3d 1107, 1111 (7th Cir. 2019).

The disagreement among the circuits—now quite entrenched—is another reason not to change positions. Unless our circuit is an outlier, "it makes little sense for us to jump from one side of the circuit split to the other." *A.C. by M.C. v. Metro. Sch. Dist. of Martinsville*, 75 F.4th 760, 771 (7th Cir. 2023). As we explained in another case asking us to switch sides in a pronounced circuit split:

> Precedents are not sacrosanct; we have over-
> ruled many. But when the issue is closely bal-
> anced (the 5 to 4 division among the circuits
> reveals at least that much), there is less reason
> to think that a shift will undo rather than create
> an error. … When one circuit's overruling
> would convert a 5–4 conflict into a 4–5 conflict,
> it is best to leave well enough alone.

*Buchmeier v. United States*, 581 F.3d 561, 565–66 (7th Cir. 2009)
(en banc).

Because *Kisor* did not unsettle *Stinson*, we decline to re-
consider our circuit caselaw deferring to Application Note 1.

**B. "Major Questions Doctrine"**

Alternatively, White invokes the "major questions doc-
trine" and the Supreme Court's decision in *West Virginia*,
arguing that the Sentencing Commission lacked clear con-
gressional authorization to include inchoate offenses as
career-offender predicates.[3] This argument requires only
brief treatment: the major questions doctrine does not apply
here.

---

[3] White did not raise this argument below. His failure to do so is in a
sense understandable because the Supreme Court's decision in *West
Virginia* was issued about a month after his resentencing hearing. On the
other hand, the major questions doctrine is not new, so he could have
raised an argument along these lines at his resentencing hearing—or at
his initial sentencing in 2019, for that matter. But the government has not
raised waiver or forfeiture, choosing instead to address the argument on
the merits. *See United States v. Stapleton*, 56 F.4th 532, 541 (7th Cir. 2022)
(explaining that a party can "waive waiver" by failing to assert it).

The doctrine derives from the basic principle that statutory texts "must be read in their context and with a view to their place in the overall statutory scheme." *West Virginia*, 597 U.S. at 721 (quotation marks omitted). When a statute "confers authority upon an administrative agency," the judiciary's interpretive task "must be 'shaped, at least in some measure, by the nature of the question presented'— whether Congress in fact meant to confer the power the agency has asserted." *Id.* (quoting *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 159 (2000)). In the "ordinary case," the question of the scope of the agency's authority "has no great effect on the appropriate analysis." *Id.* But in certain "extraordinary cases," a "different approach" may apply. *Id.*

When does a case qualify as extraordinary enough to bring the major questions doctrine into play? The Court explained in *West Virginia*: the doctrine applies when an agency has adopted a regulatory scheme of great economic and political significance, and the "history and the breadth" of its assertion of authority "provide a reason to hesitate before concluding that Congress meant to confer such authority." *Id.* (internal quotation marks omitted). In this limited category of cases, the government must "point to clear congressional authorization" to justify the agency's power "to regulate in that manner." *Id.* at 732 (internal quotation marks omitted).

Though the precise contours of the doctrine remain hazy, *see Biden v. Nebraska*, 143 S. Ct. 2355, 2376 (2023) (Barrett, J., concurring), White's case plainly lacks the hallmarks of the truly extraordinary cases that have triggered it. *West Virginia*, 597 U.S. at 721–23. Application Note 1 to § 4B1.2 can hardly

be characterized as a "transformative expansion" of the Sentencing Commission's statutory authority. *Id.* at 724. The Commission has not "claim[ed] to discover in a long-extant statute an unheralded power" to regulate in an unprecedented way. *Id.* (quotation marks omitted). Nor has the Commission attempted to use vague language in the governing statute to "adopt a regulatory program that Congress ha[s] conspicuously and repeatedly declined to enact itself." *Id.*

On the contrary, the Sentencing Reform Act specifically authorizes the Commission to make decisions like this one concerning sentencing policy. *See* 28 U.S.C. § 991(b)(1) (empowering the Commission to "establish sentencing policies and practices for the Federal criminal justice system"); *see also id.* § 994(a)–(b) (empowering the Commission to promulgate sentencing guidelines and "general policy statements regarding application of the guidelines or any other aspect of sentencing or sentence implementation"). The Act gives the Commission "significant discretion in formulating guidelines," "assess[ing] the relative weight of [certain] offender characteristics," and "exercis[ing] its judgment about which types of crimes and which types of criminals are to be considered similar for the purposes of sentencing." *Mistretta v. United States*, 488 U.S. 361, 377–78 (1989). And the Commission has addressed the issue of inchoate offenses in the commentary to the career-offender guideline ever since it promulgated the first Guidelines Manual in 1987. *See* U.S.S.G. § 4B1.2 cmt. n.2 (1987) (explaining that the definition of "controlled substance offense" in the career-offender guideline "includes aiding and abetting, conspiring, or attempting to commit such offenses").

Indeed, we held 30 years ago that the Commission's broad statutory power to promulgate sentencing guidelines includes the authority to issue commentary treating inchoate offenses as career-offender predicates. *United States v. Damerville*, 27 F.3d 254, 256–57 (7th Cir. 1994). Though the issue was not framed in terms of the present-day major questions doctrine, *Damerville* forecloses White's argument.

*        *        *

Before closing, we note that the Sentencing Commission recently addressed the circuit split regarding Application Note 1. The Commission amended § 4B1.2 to add inchoate offenses to the definitions of "crime of violence" and "controlled substance offense," moving the text of Application Note 1 to the guideline itself. The amendment became effective on November 1, 2023.

AFFIRMED