In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 23-2404

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

OLALEKAN JACOB PONLE,

*Defendant-Appellant.*

_____

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:20-cr-00318 — **Robert W. Gettleman**, *Judge*.

_____

ARGUED MARCH 27, 2024 — DECIDED AUGUST 5, 2024

_____

Before EASTERBROOK, JACKSON-AKIWUMI, and LEE, *Circuit Judges*.

LEE, *Circuit Judge*. Olalekan Jacob Ponle stole over $8 million from seven businesses and tried to steal $51 million more in a far-reaching scheme to fraudulently induce wire transfers. He eventually pleaded guilty to one count of wire fraud in violation of 18 U.S.C. § 1343. For fraud crimes, § 2B1.1 of the United States Sentencing Guidelines directs a court to add escalating enhancements to a defendant's offense level

depending on the amount of "loss." U.S.S.G. § 2B1.1(b). The greater the loss, the higher the enhancement. The question here is whether "loss" in § 2B1.1(b) denotes only actual loss or could also mean intended but unrealized loss. The district court determined it was the latter and, taking the greater of the two, applied a twenty-two point increase to Ponle's offense level, resulting in a custodial Guidelines range of 168 to 210 months. Ponle appeals, arguing that the district court erred because "loss" means actual loss not intended loss. We affirm.[1]

## I.  Background

In 2019, Ponle, along with several co-schemers, used phishing emails and information purchased on the dark web to gain access to individual corporate email accounts at different companies. They then used these email accounts to send fake emails to other employees, instructing them to wire funds to certain bank accounts ostensibly for corporate needs. The employees complied, unaware that the bank accounts actually belonged to Ponle.

At times, the companies detected the fraudulent transfers and were able to stop or reverse them. Sometimes, the receiving banks discovered the fraud and closed the accounts before the transactions occurred. Despite this, Ponle successfully stole $8,038,214.99 from seven companies. He also tried but

---

[1] In his brief, Ponle also argued that the district court erred by applying a two-level enhancement for an offense involving ten or more victims under U.S.S.G. § 2B1.1(b)(2)(A). Ponle's counsel, however, abandoned this position at oral argument, and we need not discuss it further. *See United States v. Bridges*, 760 F.2d 151, 152 n.1 (7th Cir. 1985).

failed to steal an additional $51,310,561.32 from the same companies as well as five others.

The government indicted Ponle and charged him with eight counts of wire fraud in violation of 18 U.S.C. § 1343 on July 15, 2020. Ponle pleaded guilty to one count on April 6, 2023, and acknowledged that he owed over $8 million in restitution.

To aid the court in sentencing, the United States Probation Office prepared a presentence investigation report (PSR). Relevant here, the PSR determined that Ponle's scheme caused an actual loss of $8,038,214.99 and an intended loss of $51,310,561.32 (that is, funds Ponle tried to steal but failed for one reason or another). Then, relying on the Sentencing Commission's commentary to § 2B1.1(b), *see* U.S.S.G. § 2B1.1, cmt. n.3(A) (noting that, subject to certain exclusions inapplicable here, "loss is the greater of actual loss or intended loss"), the PSR used the intended loss amount to add twenty-two levels to Ponle's base offense level. After applying additional adjustments (not challenged here), the PSR calculated Ponle's total offense level to be thirty-six, which, combined with Ponle's criminal history of I, resulted in a Guidelines range of 188 to 235 months of imprisonment and one to three years of supervised release.

At the sentencing hearing, Ponle's principal objection to the proposed Guidelines calculation was its use of intended loss to increase his offense level. According to Ponle, the court should not rely upon the commentary to § 2B1.1(b)(1) because the word "loss" in that section unambiguously means actual loss. Doing so, in his view, would violate the Supreme Court's instructions in *Kisor v. Wilke*, 588 U.S. 558 (2019), which prohibits courts from deferring to agency interpretations of

unambiguous regulations. The government responded that *Kisor* did not overrule *Stinson v. United States*, 508 U.S. 36 (1993), where the Supreme Court recognized the Sentencing Commission's commentary as an important tool for interpreting the Guidelines.

After considering the arguments, the district court agreed with the government. As a result, and after ruling on other objections, the court found Ponle's total offense level to be thirty-five and his criminal history category to be I, which resulted in a custodial Guidelines range of 168 to 210 months. The court then considered the sentencing factors in 18 U.S.C. § 3553(a) and, finding significant mitigating factors, imposed a sentence of 100 months' imprisonment with no supervised release.[2]

## II. Analysis

When examining a district court's sentencing decision, we review "legal interpretations of the Sentencing Guidelines de novo and factual findings as to loss amount for clear error." *United States v. Griffin*, 76 F.4th 724, 745 (7th Cir. 2023).

Section 2B1.1(b)(1) contains an escalating table of offense level enhancements when the "loss" resulting from a fraud crime exceeds $6,500. U.S.S.G. § 2B1.1(b)(1). Relevant here, when the loss is more than $3.5 million but less than $9.5 million, the table instructs the court to add eighteen to the defendant's base offense level. *Id.* § 2B1.1(b)(1)(J). When the loss is greater than $25 million but less than $65 million, the court

---

[2] The court did not order a term of supervised release because Ponle was a noncitizen whose deportation was likely.

is to add twenty-two to the base offense level. *Id.* § 2B1.1(b)(1)(L).

The word "loss" is not defined in § 2B1.1(b)(1) itself. Application Note 3 in the commentary to § 2B1.1, however, explains that "loss is the greater of actual loss or intended loss." U.S.S.G. § 2B1.1 cmt. n.3(A). The note goes on to define "actual loss" as "the reasonably foreseeable pecuniary harm that resulted from the offense," *id.* cmt. n.3(A)(i), and "intended loss" as "the pecuniary harm that the defendant purposely sought to inflict; and includes intended pecuniary harm that would have been impossible or unlikely to occur." *Id.* cmt. n.3(A)(ii) (internal numbering omitted).

In *Stinson*, the Supreme Court considered the role of the commentary to the Guidelines. In a nutshell, it found that the commentary "is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." 508 U.S. at 38. Along the way, the Court remarked that the Guidelines "are the equivalent of legislative rules adopted by federal agencies." *Id.* at 45. And, while it recognized that the "analogy is not precise," the Court described the commentary as "akin to an agency's interpretation of its own legislative rules." *Id.*

The Supreme Court's use of this "analogy" has prompted some to believe that the Court overruled *Stinson* when deciding *Kisor*. In *Kisor*, the Court considered the validity of prior cases that had mandated judicial deference to "agencies' reasonable readings of genuinely ambiguous regulations." 588 U.S. at 563.[3] And, although it did not outright abandon *Auer*

---

[3] Those cases were *Auer v. Robbins*, 519 U.S. 452 (1997), and *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410 (1945). And the Supreme Court

deference, it used *Kisor* as an opportunity to "restate, and somewhat expand on" the principles articulated in *Auer* and its progeny. 588 U.S. at 574. In short, *Kisor* confirmed that a court should only defer to an agency interpretation of its regulations if, after applying "all traditional methods of interpretation," the regulation in question is "genuinely susceptible to multiple reasonable meanings and the agency's interpretation lines up with one of them." *Id.* at 581.

Ponle's argument then goes like this. In *Stinson*, the Supreme Court likened the Guidelines to agency regulations, and the Commission's commentary to an agency's interpretation of its own regulations. Then, in *Kisor*, the Court held that only when a regulation is genuinely ambiguous can a court defer to an agency's interpretation of it. In § 2B1.1(b), Ponle asserts, the word "loss" is not ambiguous and has a clearly ascertainable meaning. Thus, he reasons, the district court erred by relying on Application Note 3 to § 2B1.1 in violation of the Supreme Court's holding in *Kisor*. This reasoning has found traction in some circuits. *See, e.g.*, *United States v. Castillo*, 69 F.4th 648, 651 (9th Cir. 2023); *United States v. Dupree*, 57 F.4th 1269, 1275 (11th Cir. 2023) (en banc); *United States v. Nasir*, 982 F.3d 144, 158 (3d Cir. 2020), *cert. granted, judgment vacated on other grounds*, 142 S. Ct. 56 (2021); *United States v. Riccardi*, 989 F.3d 476, 485 (6th Cir. 2021). But not in others. *See, e.g.*, *United States v. Vargas*, 74 F.4th 673, 680–83 (5th Cir. 2023) (en banc); *United States v. Maloid*, 71 F.4th 795, 805–08 (10th Cir. 2023).

---

referred to this practice as "*Auer* deference," *Kisor*, 588 U.S. at 563, which (it should be noted) is different from *Chevron* deference. *See Loper Bright Enter. v. Raimondo*, 144 S. Ct. 2244, 2306 (2024) (Kagan, J., dissenting) (noting that the Court had declined to overrule *Auer* deference in *Kisor*).

Until recently, we had declined to definitively resolve this issue, but continued to rely on *Stinson*, utilizing the Commission's commentary to interpret the Guidelines. *See, e.g.*, *United States v. Lomax*, 51 F.4th 222, 228–29 (7th Cir. 2022) (deferring to U.S.S.G. § 4B1.2's Application Note 1 to conclude that a "crime of violence" includes inchoate offenses); *United States v. Smith*, 989 F.3d 575, 584–85 (7th Cir. 2021) (same with respect to the term "controlled substance offense"). In *United States v. White*, however, we took the issue head on. 97 F.4th 532 (7th Cir. 2024).

After reviewing the reasoning of our sister circuits and our own cases, we conclusively held that "*Kisor* did not purport to modify *Stinson*." *Id.* at 539. We based our determination on a number of factors. For one, we observed that "*Kisor*'s effect on *Stinson* is unclear" because the Supreme Court in *Stinson* had cautioned that the analogy was not precise; the Sentencing Commission is not an executive agency but an independent commission within the judicial branch; and the Commission's "statutory charge is unique in ways that affect the deference calculus." *Id.* at 538–39 (internal citations omitted).[4]

---

[4] For example, Congress has designated the Sentencing Commission as "an independent commission in the judicial branch of the United States," comprised of seven voting members (at least three of whom must be federal judges), rather than an agency within the executive branch, 28 U.S.C. § 991(a), "making it unquestionably … a peculiar institution within the framework of our Government." *United States v. Moses*, 23 F.4th 347, 352 (4th Cir. 2022) (quoting *United States v. Mistretta*, 488 U.S. 361, 384 (1989). Congress also has expressly authorized the Commission to promulgate "general policy statements regarding application of the guidelines." 28 U.S.C. § 994(a)(2). And, although § 994(x) and § 994(p) require the Commission to submit only proposed Guideline amendments to the public for notice and comment and to Congress for modification and disapproval, respectively, the Commission generally follows the same

More importantly, we explained that "the Court said nothing in *Kisor* to suggest it was altering *Stinson*," mentioning it only in a footnote about *Seminole Rock* deference (another name for *Auer* deference). *Id.* at 539. And we took seriously, as we must, the Supreme Court's instruction that we "resist invitations to find its decisions overruled by implication." *Id.* (citing *Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 136 (2023)).

The holding in *White* provides the answer here—*Stinson* controls. But because we are dealing with § 2B1.1(b)(1), while *White* addressed § 4B1.2 (defining the terms used in the career offender provision), we believe some additional analysis is warranted.

As noted, one of the distinctive differences between the Guidelines commentary and an executive agency's interpretation of its legislative rules is that the Commission typically publishes proposed amendments to the commentary in the Federal Register for public notice and comment. *See Moses*, 23 F.4th at 353. The commentary to the Guidelines that defines "loss" as the greater of the actual and intended loss underwent this process.

Prior to 2001, the Guidelines offered separate provisions for theft and fraud offenses, and only the fraud Guidelines defined "loss" as the greater of the actual and intended loss. *See* U.S.S.G. App. C, Vol. II, amend. 617 at 172, 176. When the Commission decided to combine these sections in June 2001,

---

process for adopting and amending the commentary as well. *See Moses*, 23 F.4th at 353. Furthermore, § 1B1.7 (which did go through the public notice and comment and Congressional approval process) expressly provides that the commentary accompanying a particular Guideline section "may interpret the guideline or explain how it is to be applied." U.S.S.G. § 1B1.7.

it published two proposed amendments to the commentary in the Federal Register for public notice and comment. Federal Register Notice of Proposed Amendments to the Sentencing Guidelines and Request for Public Comment; Notice of Public Hearing, 66 Fed. Reg. 7962, 7993, 7995 (Jan. 26, 2001). While these proposals offered alternative definitions for "actual loss" and "intended loss," both contained the general rule that "loss" meant "the greater of actual loss or intended loss." *Id.*

Multiple stakeholders commented on these proposals, with some proposing alternative ways to calculate "loss," such as averaging the intended and actual amounts. U.S. Sent'g Comm'n, *Public Comment on Proposed Amendments* 60 (Mar. 2001), https://www.ussc.gov/sites/default/files/pdf/amendment-process/public-comment/200103/200103_PCpt1.pdf. But the language the Commission eventually adopted remained unchanged: "loss is the greater of the actual loss or intended loss." Federal Register Notice of Amendments to the Sentencing Guidelines for United States Courts, 66 Fed. Reg. 30512, 30529 (June 6, 2001). The final proposed amendments were submitted to Congress for review, and that version of the Guidelines was adopted, effective November 1, 2001. *Id.* at 30513.[5]

The fact that the advisory note at issue underwent the public notice and comment process and Congressional review distinguishes it from an executive agency's internal interpretation of its own regulations that animated the Supreme

---

[5] The general rule was initially part of Advisory Note 2, but the Commission moved it, unamended, in 2003 to its current position in Note 3. U.S.S.G. App. C, Vol. II, amend. 581 at 13.

Court's concern in *Kisor*. *See Kisor*, 588 U.S. at 607–08 (Gorsuch, J., dissenting) (criticizing *Auer* deference because it allows an agency to promulgate a binding interpretation without affording the public a chance to weigh in).

Turning back to this case, it is undisputed that Ponle intended to defraud his victims of $51,310,561.32. And, consistent with Advisory Note 3 to § 2B1.1(b), the district court correctly utilized "the greater of the actual loss or intended loss" to calculate Ponle's offense level as *Stinson* requires.

### III.  Conclusion

For these reasons, we AFFIRM the judgment of the district court.